**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OROBOSA IZINEG ENAGBARE | |
| Appellant | No. 2854 EDA 2018 |

Appeal from the PCRA Order Entered July 20, 2018
In the Court of Common Pleas of Chester County
Criminal Division at No: CP-15-CR-0002279-2012

BEFORE:  GANTMAN, P.J.E., STABILE, J. and STEVENS, P.J.E.*

MEMORANDUM BY STABILE, J.:　　　　　**FILED DECEMBER 31, 2019**

Appellant, Orobosa Izineg Enagbare, who is serving a sentence of 4½-9 years' imprisonment for rape of an unconscious person, sexual assault, aggravated indecent assault, and indecent assault,[1] appeals from an order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Appellant argues, *inter alia*, that trial counsel was ineffective for failing to object to the trial court's decision to provide the jury with transcripts of Appellant's telephone conversations with the victim.  We vacate the order denying PCRA relief and remand for an evidentiary hearing concerning whether counsel's decision not to object was reasonable.

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121, 3124.1, 3125, and 3126, respectively.  Appellant also plead guilty to simple assault and was sentenced to a concurrent term of 1-23 months' imprisonment.  Appellant does not seek PCRA relief from his simple assault conviction.

We also vacate the portion of Appellant's sentence requiring him to register and report as a sex offender under the Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10—9799.42.

In our memorandum deciding Appellant's direct appeal, we furnished the following overview of this case:

> On the evening of May 26, 2012, the victim, a female college student, went to a bar in West Chester to celebrate the end of the semester. She sent text messages inviting most of the people she knew, including Appellant, to join her. The group consumed alcohol throughout the evening and danced. Sometime between 1:45 a.m. and 2:00 a.m., Appellant asked the victim if she would like to be walked home. The victim accepted the offer. The two left the bar by themselves and began the walk back to her apartment, which was approximately fifteen minutes away.
>
> Due to her intoxication, the victim's recollection of the details of what next occurred was somewhat hazy. She recalled walking with Appellant, entering her residence, and changing her clothes. The next thing she remembered is waking up and experiencing vaginal pain. She saw Appellant on top of her and felt his penis inside her. She told him to stop, and attempted to push him away. Appellant did not stop, and she again fell asleep. She testified that she did not consent to sex at any point.
>
> Around 9:00 a.m., the victim awoke with vaginal pain and told a friend she had been raped. She proceeded to a hospital, where an examination was performed and evidence collected for a rape kit. A police officer told the victim to contact Detective Stan Billie.
>
> On May 29, 2012, the victim contacted Detective Billie, who initiated an investigation. The victim agreed to call Appellant and have that conversation recorded. Two separate recorded phone calls were played to the jury.

*Commonwealth v. Enagbare*, 785 EDA 2016, at 1-2 (Pa. Super., 2/8/17) (unpublished memorandum).

- 2 -

During the first phone call, Appellant initially denied having sex with the victim while she was passed out. N.T., 5/12/15, at 146. The victim replied that she woke up while Appellant was having sex with her and pushed him off. *Id.* at 147. She asked him what he was thinking, and he answered, "I don't know. I just fucked up." *Id.* She then asked, "What the hell went through your head that you thought oh, this girl is asleep so I'm gonna do whatever I can?" *Id.* at 150. He replied, "I don't know. Really nothing was going through my head." *Id.*

Moments later, Appellant and the victim said the following:

Appellant: I'll tell you all we did. We made out for a little bit and we had sex for a little bit, and then I took you up and I left.

Victim: And then when I woke up and pushed, you never thought to stop?

Appellant: No. I went for like five, ten more minutes, I think.

Victim: Then why did you keep going? Why? Why? I woke up. First of all, I was sleeping which is the screwed up part, but I woke up and pushed you away. Why in God's name did you continue to go for five minutes or more?

Appellant: I don't know. I wasn't thinking that night at all honestly.

*Id.* at 153-54. Appellant then stated, "We had sexual intercourse. All the stuff that you're telling me. After awhile you pushed me off of you and I went for like five more minutes." *Id.* at 154. He added, "I'm saying I fucked up and I mean, I know obviously it wasn't consensual. It was never consensual.

None of it was okay." *Id.* at 158. He also admitted using a condom and then throwing it away in a public trashcan. *Id.*

In the second phone conversation, Appellant stated multiple times that he had "fucked up" and made poor decisions. At one point, he exclaimed, "I'm a dumbass. I fucked up. I made really shitty decisions." *Id.* at 168. The victim responded, "Shitty decisions? You realize you raped me, right?" *Id.* Appellant answered, "Yes. It's not okay. Obviously, it's nowhere near." *Id.*

Appellant was charged with rape by forcible compulsion, rape of an unconscious person, sexual assault, and aggravated indecent assault. Appellant proceeded to a jury trial, but the court granted Appellant's motion for mistrial on the ground that the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over three pages of a twenty page police report to Appellant until the middle of trial. Subsequently, the court denied Appellant's motion to bar retrial on the basis of prosecutorial misconduct.

Appellant filed a motion to suppress a statement that Appellant gave to Detective Billie, which the court granted after an evidentiary hearing. The Commonwealth appealed under Pa.R.A.P. 311(d), certifying that the order would terminate or substantially handicap its prosecution. This Court affirmed, *Commonwealth v. Enagbare*, 102 A.3d 535 (Pa. Super. 2014) (unpublished memorandum), and the Supreme Court denied the

- 4 -

Commonwealth's petition for allowance of appeal. *Commonwealth v. Enagbare*, 101 A.3d 101 (Pa. 2014).

A second jury trial commenced on May 12, 2015. The jury heard the recordings of Appellant's phone calls with the victim, and the trial court admitted transcripts of the phone calls into evidence. During jury deliberations, the jury asked to review the transcripts. N.T., 5/15/15, at 3. Defense counsel did not object, and the trial court granted the jury's request. *Id.* at 6-7. On May 15, 2015, Appellant was acquitted of rape by forcible compulsion but was convicted of the remaining charges, including rape of an unconscious person.

The trial court sentenced Appellant to 4½-9 years' imprisonment for rape. Appellant's sentences for sexual assault and aggravated indecent assault merged with his rape sentence, and the court imposed no further penalty on Appellant's conviction for indecent assault. The court also ordered Appellant to register under SORNA for the rest of his life. filed post-sentence motions, which the trial court denied, and a timely direct appeal. On February 8, 2017, this Court affirmed Appellant's judgment of sentence. We held, *inter alia*, that the Commonwealth did not violate Appellant's constitutional right against double jeopardy by failing to produce *Brady* materials until the middle of his first trial. To elaborate, at the close of the Commonwealth's case-in-chief in that trial, the Commonwealth informed the trial court that it had not turned over three pages of a twenty page police report that included

interviews with the victim and her boyfriend and a synopsis of an interview with another person who was at the bar on the night of the incident. *Enagbare*, 785 EDA 2016, at 16. The victim stated during the interview that she had never been in Appellant's house, which, according to defense counsel, contradicted her trial testimony. The court granted Appellant's motion for mistrial for failing to produce the three pages prior to trial. *Id.* Appellant moved to bar a retrial, but after an evidentiary hearing, the court concluded: "Detective Billie testified that he believed the entire report was turned over to the Commonwealth. The court finds his testimony credible, and therefore concludes that the failure to turn over the missing pages was inadvertent, and not willful or intentional." *Id.* at 17. We determined that this credibility determination "binds us," and since double jeopardy did not apply absent intentional misconduct, *see Commonwealth v. Kearns*, 70 A.3d 881, 886 (Pa. Super. 2013), we upheld the trial court's order denying Appellant's motion. *Id.*

On August 4, 2017, through new counsel, Appellant filed a petition for "writ of habeas corpus," which the court treated as a timely PCRA petition. On April 25, 2018, the court filed a notice of intent to dismiss Appellant's petition without a hearing. On July 20, 2018, the PCRA court entered an order dismissing the petition. On August 14, 2018, Appellant filed a praecipe to dismiss PCRA counsel as his attorney. On August 18, 2018, Appellant timely appealed the order of dismissal to this Court by delivering the notice of appeal

to prison authorities.[2]  Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.  On December 19, 2018, following a *Grazier*[3] hearing, the PCRA court ordered that Appellant knowingly, voluntarily and intelligently waived his right to court-appointed counsel to represent him in this appeal.

Appellant raises the following issues in his *pro se* appellate brief:

I. Does the vitality of [Appellant]'s detention violate due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections One and Nine of the Pennsylvania Constitution where the Commonwealth's commencement of retrial after its delayed disclosure of the Serology Report, which revealed previously-unknown instances of intentional prosecutorial misconducts that prohibited retrial, establishes a deprivation of his liberty to be free from reprosecution?

II. Did the PCRA court err by finding, and not reconsidering, [trial counsel] Capuano effective for failing to object under Pa.R.Crim.P. 646(C)(2) when the jury was permitted to take the recorded-call transcripts into deliberations, and for failing to raise this issue on direct appeal because: (A) arguable merit exists, where both transcripts contain [Appellant]'s "recorded confessions" and counsel's alleged strategy is inapplicable to this prong, establishing ineffectiveness as a matter of law; (B) alternatively, it failed to consider the remaining developed prongs for trial and appellate counsel contexts after applying inapplicable/distinguishable authority?

III. Did the PCRA court err by applying, and not reconsidering, the ruling in *Commonwealth v. Penrose*, 669 A.2d 996 (Pa. Super. 1995), when that ruling conflicts with [Appellant]'s reliance on the

_____

[2] Under the "prisoner mailbox rule," a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing. *Commonwealth v. Jones*, 700 A.2d 423, 426 (Pa. 1997).  The prisoner mailbox rule applies here because Appellant dismissed his attorney several days before taking his appeal.

[3] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

ruling in **Commonwealth v. Young**, 767 A.2d 1072 (Pa. Super. 2001), where **Young** controls and effectively overruled Penrose based on applicable legal principles, updated legal developments, and an irrelevant procedural distinction; further, should this Court, *en banc*, expressly overrule **Penrose** as a matter of substantial public importance?

IV. Did the PCRA court violate Pa.R.Crim.P. 905(B) and err under Pa.R.Crim.P. 907(1), without reconsideration, by dismissing [Appellant]'s counseled petition without ordering an amendment where the Notice of Intent to Dismiss substantiates a defectively filed original petition and where the defects were curable; further, should this Court require proceedings to continue below when Petitioners timely raise PCRA counsel's ineffectiveness?

Appellant's Brief at 6-7.

In his first argument, Appellant asserts that the Commonwealth deprived him of due process by violating his double jeopardy rights in failing to turn over three pages of the police report until the middle of his first trial and by destroying the rape kit performed on the victim without DNA analysis. No relief is due.

Preliminarily, this issue falls within the ambit of the PCRA, notwithstanding Appellant's attempt to couch it as a *habeas corpus* issue. The PCRA directs:

> This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis.

42 Pa.C.S.A. § 9542. Issues that are cognizable under the PCRA must be raised in a PCRA petition, not in a *habeas corpus* petition. **Commonwealth**

*v. Taylor*, 65 A.3d 462, 466 (Pa. Super. 2013). The PCRA subsumes the writ of *habeas corpus* unless the PCRA cannot provide a remedy. *Id.* at 465-66.

The PCRA provides in relevant part that a petitioner is eligible for relief if he pleads and proves "a violation of the Constitution of this Commonwealth or the Constitution . . . which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i). Due process claims are cognizable under this provision. *See*, *e.g.*, *Commonwealth v. Laskaris*, 595 A.2d 1230 (Pa. Super. 1991) (where petitioner complained that Commonwealth did not notify him of its intent to toll statute of limitations on ground that he was continuously absent from Pennsylvania, petitioner alleged due process violation under Section 9543(a)(2)(i)). These authorities demonstrate that Appellant's due process allegation is reviewable under Section 9543(a)(2)(i).

The Commonwealth violates a defendant's right to due process when it withholds evidence that is both favorable to the defense and material to the defendant's guilt or punishment. *Commonwealth v. Johnson*, 174 A.3d 1050, 1055 (Pa. 2017). Evidence is material for due process purposes "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Id.* at 1056. A reasonable probability does not mean that the defendant "would more likely than not have received a different verdict with the evidence"; it means only

that the likelihood of a different result is great enough to "undermine[] confidence in the outcome of the trial." *Id.*

We conclude, based on review of the record, that Appellant did not suffer any due process violation. Under the doctrine of coordinate jurisdiction, we are bound by this Court's decision on direct appeal that the Commonwealth did not intentionally withhold the three pages of the police report. *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995) (judges of coordinate jurisdiction sitting in same case should not overrule each other's decisions; court involved in later phases of litigated matter should not reopen questions decided by another judge of same court in earlier phases). Absent bad faith, the failure of police to preserve potentially useful evidence is not denial of due process. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Commonwealth v. Snyder*, 963 A.2d 396, 404 (Pa. 2009). The same precept obviously applies to less extreme circumstances such as mere delay in furnishing evidence to the defense, the situation herein. Since the delayed production of the three pages of the police report was inadvertent instead of intentional, Appellant's due process argument runs aground.

Appellant also contends that the police violated his due process rights by destroying the victim's rape kit without performing DNA analysis. We agree with the Commonwealth that the destruction of the rape kit did not prejudice Appellant, because (1) Appellant stated during two recorded telephone conversations with the victim that they had sexual intercourse and that he

used a condom, and (2) Appellant did not deny during trial that he had sex with the victim but instead argued that she consented. Consequently, the rape kit results would not have helped Appellant's defense.

We address Appellant's second and third issues together, because they concern the same claim. Appellant argues that trial counsel was ineffective for failing to object to the trial court's decision to permit the jury to examine the transcripts of Appellant's two telephone conversations with the victim during jury deliberations. To prove ineffective assistance of counsel, a PCRA petitioner must demonstrate that: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. **Commonwealth v. Pierce**, 786 A.2d 203, 213 (Pa. 2001). A claim of ineffectiveness fails if the petitioner cannot meet any one of these prongs. **Id.** at 221-22. Counsel is presumed effective, and the petitioner bears the burden of proving ineffectiveness. **Commonwealth v. Cooper**, 941 A.2d 655, 664 (Pa. 2007).

As we discuss, *infra*, the record demonstrates that Appellant's claim that counsel was ineffective for failing to object to transcripts being provided to the jury during deliberations satisfies both the first and third prongs for arguable merit and prejudice for an ineffectiveness claim under the PCRA. However, since the PCRA court did not hold an evidentiary hearing, we remand

for an evidentiary hearing limited to the second ineffectiveness criterion—specifically, whether trial counsel had a reasonable basis for not objecting to the trial court's decision to provide the transcripts to the jury during deliberations.

During its deliberations, the jury asked to see the transcripts of Appellant's phone calls with the victim. Defense counsel did not object, and the court furnished the transcripts to the jury. Pa.R.Crim.P. 646 provides in relevant part:

During deliberations, the jury shall not be permitted to have:

(1) a transcript of any trial testimony;

(2) a copy of any written or otherwise recorded **confession** by the defendant;

(3) a copy of the information or indictment; and

(4) except as provided in paragraph (B), written jury instructions.

Pa.R.Crim.P. 646(C) (emphasis added). "The recognized reason for excluding [these] items from the jury's deliberations is to prevent the jury from placing undue emphasis or credibility on the material sent back with the jury, and de-emphasizing or discrediting other items not in the room with the jury." *Commonwealth v. Creary*, 201 A.3d 749, 753-54 (Pa. Super. 2018).

We begin by analyzing whether Appellant's telephone conversations with the victim were confessions. A confession is an "extrajudicial statement . . .

[that] acknowledge[s] all essential elements of a crime."[4] **Comonwealth v. Bronshtein**, 691 A.2d 907, 917 (Pa. 1997). Although most confessions are given to the police, there are many cases in which individuals make confessions to private citizens. **See**, **e.g.**, **Commonwealth v. Bordner**, 267 A.2d 612, 617-18 (Pa. 1969)[5]; **see generally** Lafave, 2 Crim. Proc. § 6.10(b) (4th ed. 2018) (collecting cases involving confessions to private citizens).

In this case, the jury found Appellant guilty of rape under 18 Pa.C.S.A. § 3121(a)(3), which proscribes a person from "engag[ing] in sexual intercourse with a complainant . . . [w]ho is unconscious." Appellant confessed all elements of this crime during his first phone conversation with the victim. Although he denied any wrongdoing at the beginning of this conversation, he quickly abandoned this stance when the victim pressed him for details. He expressly admitting having sexual intercourse with the victim, N.T., 5/12/15, at 154, and stated that the act of intercourse "obviously . . .

---

[4] Confessions are different from admissions in that admissions only acknowledge some, but not all, elements of a crime. **Commonwealth v. Simmons**, 662 A.2d 621, 635 (Pa. 1995).

[5] The defendant in **Bordner** gave confessions to his father and mother while in custody and while police officers were present. Our Supreme Court held that the trial court properly suppressed these confessions as unconstitutional, because the parents acted as agents of the police and the police failed to give **Miranda** warnings to the defendant. **Id.**, 247 A.2d at 617-18. In the present case, however, we need not examine the constitutionality of Appellant's statements to the victim. Rule 646 only requires us to analyze whether Appellant's statements fit within the definition of a confession, not whether his constitutional rights were violated.

- 13 -

wasn't consensual. It was never consensual. None of it was o.k." **Id.** at 158. He also acknowledged that the victim was unconscious for part of this episode. The victim asked, "And then when I woke up and pushed, you never thought to stop?" **Id.** at 153. Appellant answered, "No. I went for like five, ten more minutes, I think." **Id.** The victim inquired, "Then why did you keep going? Why? Why? I woke up. First of all, I was sleeping which is the screwed up part, but I woke up and pushed you away . . ." **Id.** Appellant replied, "I don't know. I wasn't thinking that night at all honestly." **Id.** at 154. In this exchange, Appellant implicitly admitted that the victim was unconscious when he began having intercourse with her.

Not only did the first conversation constitute a confession to raping an unconscious victim, but it also served as a confession to:

(1) sexual assault under 18 Pa.C.S.A. § 3124.1, which proscribes "engag[ing] in sexual intercourse without the complainant's consent,"

(2) aggravated indecent assault under 18 Pa.C.S.A. § 3125(a)(4), which prohibits "penetration, however slight, of the genitals of the complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures" while the complainant is unconscious, and

(3) indecent assault under 18 Pa.C.S.A. § 3126(a)(4), which prohibits causing the complainant to have "indecent contact"[6] with the defendant "for the purpose of arousing sexual desire in the person" while the complainant is unconscious.

The second phone conversation began approximately ten minutes after the first conversation ended. *Id.* at 135. Appellant began by stating, "I'm a dumbass. I fucked up. I made really shitty decisions." *Id.* at 164. The victim asked whether he realized that he raped her. He answered, "Yes. It's not o.k. It's nowhere near . . ." *Id.* Later in the conversation, Appellant said, "I can't believe I did that. I feel like shit about myself." *Id.* at 170. He added, "I fucked up, and yes, I did try to cover my own tracks," *id.*, an apparent reference to his act of discarding his condom in a public trashcan. He further said that he was "being a drunk, stupid, and retarded guy," *id.* at 172, and that he was "still to blame for everything." *Id.* at 174. In short, Appellant explicitly admitted committing rape and reconfirmed his confession from the first phone conversation.

For these reasons, under Rule 646, both conversations were confessions, and the transcripts of these conversations should not have gone

---

[6] The Crimes Code defines "indecent contact" as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

out with the jury.  Therefore, we conclude Appellant's claim of ineffectiveness has arguable merit.

We next examine the third element of ineffectiveness, whether Appellant suffered prejudice.  At the outset, we address Appellant's claim whether allowing transcripts to go to the jury constitutes prejudice *per se* or whether Appellant must provide proof of prejudice.  Citing **Commonwealth v. Young**, 767 A.2d 1072 (Pa. Super. 2001), Appellant maintains that the proper test is prejudice *per se*.  We reject Appellant's argument under **Young**, as prejudice *per se* for a violation of Rule 646 under **Young** was expressly overruled by this Court in **Commonwealth v. Postie**, 200 A.3d 1015 (Pa. Super. 2018) (*en banc*).  Appellant must provide proof of prejudice.

This Court held in **Young** held that trial counsel was ineffective, and a new trial was required, because counsel failed to object to the court's erroneous decision under Pa.R.Crim.P. 1114 (now Rule 646) to allow the defendant's confession to go out with the jury during deliberations.  We reasoned that harmless error analysis was inappropriate "considering the prejudice inherent in the jury's having a copy of the written confession in its possession during deliberations."  **Id.** at 1076.  Last year, however, we overruled this portion of **Young** in **Postie**.  The defendant in **Postie** gave a written statement to the police concerning his involvement in several burglaries.  The trial court permitted the statement to go out with the jury during deliberations, and the jury found the defendant guilty of burglary and

related offenses. The defendant alleged in a PCRA petition that trial counsel was "*per se* ineffective" for failing to object to the court's decision to allow his statement to go out with the jury. *Id.* at 1027. The PCRA court denied the defendant's petition without a hearing, and an *en banc* panel of this Court affirmed. We "decline[d] to adopt a *per se* ineffectiveness standard for a violation of Rule 646(C)" because "Pennsylvania law does not support that precedent." *Id.* at 1029. We continued:

> To the extent **Young** espouses a *per se* ineffectiveness standard for a violation of Rule 646(C), we expressly overrule it, as our courts have presumed prejudice in only the rarest of circumstances. **See** [**Commonwealth v.**] **Spotz**, [870 A.2d 822, 834 (Pa. 2005)]. **See also Commonwealth v. Rosado**, [] 150 A.3d 425 ([Pa.] 2016) (explaining very limited circumstances where court will presume prejudice under Pennsylvania law; *per se* ineffectiveness of counsel occurs with actual or constructive denial of counsel, state interference with assistance of counsel, counsel's failure to subject prosecution's case to meaningful adversarial testing, or counsel's actual conflict of interest). Under the circumstances of the present case, counsel's trial strategy to allow Appellant's written statement to go out with the jury during deliberations simply does not fall into one of the limited *per se* categories subject to presumed prejudice. **See id.** Consequently, Appellant must establish his right to relief under the traditional three-prong test for ineffectiveness of counsel.

*Id.* at 1030. In short, under **Postie**, when asserting an ineffectiveness claim under the PCRA, petitioners must prove that a Rule 646 violation caused prejudice; prejudice is not presumed.

To establish prejudice, Appellant must demonstrate that the jury placed undue emphasis on the transcripts of his conversations with the victim. **Creary**, 201 A.3d at 753-54 (items enumerated in Rule 646 are excluded from

- 17 -

jury deliberations to prevent jury from placing undue emphasis or credibility upon them).  We conclude Appellant has satisfied his burden to establish prejudice as borne out by comparing this case to **Postie**.  **Postie** suggested in *dicta* that the defendant in a rape prosecution did not suffer prejudice when the court sent out his written statement with the jury, because, *inter alia*, his defense at trial was that the statement exonerated him instead of being a confession, and the jury only received a redacted portion of the statement. **Id.** at 1029.  Here, in contrast, the transcripts constituted confessions to multiple sexual offenses, items expressly excluded from jury deliberations under Rule 646.  Further, the trial court did not merely decide on its own to send the transcripts out with the jury.  The jury affirmatively requested to examine them, an indication that the jury placed undue weight upon them— the very reason why Rule 646 explicitly excludes confessions from the jury room.  **Creary**, 201 A.3d at 753-54.

Finally, we address the second element of the ineffectiveness test upon which we find we must order a remand, whether trial counsel had a reasonable basis for not objecting to the transcripts being provided to the jury during its deliberations.  "The PCRA court does not question whether there were other more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any reasonable basis." **Commonwealth v. Mason**, 130 A.3d 601, 618 (Pa. 2015) (citation and punctuatlon omitted).  "Where matters of strategy and tactics are concerned,

[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.* (citations and punctuation omitted).

Importantly, "the reasonableness of an attorney's strategic or tactical decision making is a matter that we usually consider only where evidence has been taken on that point" by the PCRA court. *Commonwealth v. DuPont*, 860 A.2d 525, 533 (Pa. Super. 2004). Indeed, in general, to enable appellate review, PCRA courts must provide a "legally robust discussion, complete with clear findings of fact where required." *Commonwealth v. Montalvo*, 114 A.3d 401, 410 (Pa. 2015). The PCRA court herein did not receive any evidence because it denied Appellant's petition without a hearing. The Commonwealth surmises, however, that counsel had two reasons for not objecting to the transcripts going out with the jury. Commonwealth's Brief at 37. First, in his closing argument, counsel pointed to the beginning of the first phone conversation in which Appellant denied any wrongdoing. The Commonwealth suggests that counsel wanted the jury to read this part of the transcript and give it greater weight than the rest of the conversation. Second, counsel believed that the transcripts showed that Appellant merely intended to "placate the victim," not to admit guilt. *Id.* Despite whatever merit these contentions may have, it is not our place as an appellate court to rule on the credibility or factual merits of a case. Therefore, we find that we must remand

this case to the PCRA court for an evidentiary hearing on the reasonableness of counsel's actions and for entry of findings of fact and conclusions of law on this subject.

We recognize that in **Postie**, we addressed the reasonableness of trial counsel's conduct even though the PCRA court dismissed the PCRA petition without a hearing. **Id.**, 200 A.3d at 1020-21, 1030. In **Postie**, however, the record made clear that counsel acted reasonably in allowing the defendant's statement to go out with the jury, because counsel had argued at length that the statement was exculpatory and contradicted the testimony of the defendant's co-conspirators, and counsel and the prosecutor had agreed to redact portions of the statement before giving it to the jury. **Id.** at 1030. "No hearing [was] required on this issue" since "the record itself" demonstrated that counsel "had a very good reason to have the jury review [the statement] during its deliberations." **Id.** at 1030-31. The record in the present case, however, raises questions of fact about the reasonableness of counsel's actions that we, as an appellate court, are not in a position to resolve. Thus, unlike in **Postie**, we must remand for further proceedings in the PCRA court.

In his final argument, Appellant maintains that the PCRA court improperly denied Appellant's request to file an amended *pro se* PCRA petition in response to the PCRA court's notice of intent to dismiss his original, counseled petition without a hearing. We are unable to review this claim and therefore it fails, because in his appellate briefing Appellant fails to state what

issues he would have raised in his *pro se* amended PCRA petition that were not already in his counseled PCRA petition.

Appellant has filed several applications for relief in this Court seeking an expedited briefing schedule, expedited argument and *en banc* review. All applications are denied.

We raise one other issue *sua sponte*. At sentencing, the trial court ordered Appellant to register for life as a Tier III sexual offender under SORNA.[7] SORNA does not apply to Appellant because he committed his offenses before SORNA's effective date. Thus, application of SORNA violates Appellant's rights under the *ex post facto* clauses of the United States and Pennsylvania Constitutions.

The legislature enacted SORNA on December 20, 2011, and it became effective one year later, on December 20, 2012. Although SORNA and pre-SORNA law (known as "Megan's Law") both carry lifetime registration requirements for rape, SORNA has more extensive reporting requirements than Megan's Law. Whereas Megan's Law required registrants to appear in-person annually, 42 Pa.C.S.A. § 9796(b) (expired December 20, 2012), SORNA requires Tier III offenders such as Appellant to report every ninety days for life and post personal information on the Pennsylvania State Police

---

[7] **See** 42 Pa.C.S.A. § 9799.14(d) (defining rape as a Tier III offense); 42 Pa.C.S.A. § 9799.15(a)(3) (requiring Tier III offenders to register as sex offender for life).

website.  42 Pa.C.S.A. §§ 9799.15(e)(3), 9799.25(a)(3); *Commonwealth v. Lippincott*, 208 A.3d 143, 148 (Pa. Super. 2019) (*en banc*).

In *Commonwealth v. Muniz*, 164 A.3d 1189, 1218 (Pa. 2017), our Supreme Court held that SORNA is punitive, and that retroactive application of SORNA to past sexual offenders violates the *ex post facto* clauses of the United States and Pennsylvania Constitution.  Subsequently, this Court held that *Muniz* created a substantive rule that retroactively applies in the collateral context.  *Commonwealth v. Rivera-Figueroa*, 174 A.3d 674, 678 (Pa. Super. 2017).

Earlier this year, in *Lippincott*, the appellant committed sexual offenses after SORNA's enactment in 2011 but before its effective date of December 20, 2012.  We held that the appellant was not subject to SORNA's registration and reporting requirements because he committed his offenses before SORNA's effective date.  We reasoned:

> To apply SORNA to offenders whose crimes were committed before its effective date would increase punishment for sex offenses from the punishment that existed at the time of the offense. Therefore, . . . application of SORNA to sex offenders for offenses committed before its effective date violates the *ex post facto* clauses of the United States and Pennsylvania Constitution.

*Id.* at 150.  We remanded the case to the trial court "to determine the appropriate registration and reporting requirements for Appellant."  *Id.* at 152-53.

Because SORNA constitutes punishment, and because Appellant filed a timely PCRA petition, we have the authority to raise the legality of his sentence

*sua sponte*. **Commonwealth v. Ballance**, 203 A.3d 1027, 1031 (Pa. Super. 2018) (legality of sentence can be reviewed in context of timely PCRA petition). Analogous to **Lippincott**, the Commonwealth alleges that Appellant committed sexual offenses on May 26, 2012, after SORNA's enactment but before its effective date. Thus, application of SORNA violates Appellant's rights under the *ex post facto* clauses of the United States and Pennsylvania Constitutions. **Id.** at 150; **see also Commonwealth v. Lewis**, --- A.3d ---, 2019 WL 5431731, *3 (Pa. Super., Oct. 23, 2019) (unpublished memorandum)[8] (in appeal from order denying timely PCRA petition, where petitioner's sexual offenses took place before SORNA's effective date, Superior Court *sua sponte* vacated portion of judgment of sentence requiring petitioner to register for life under SORNA). We vacate the portion of Appellant's judgment of sentence requiring him to register and report under SORNA.

PCRA order vacated. Judgment of sentence vacated as to SORNA registration and reporting requirements. Application for expedited briefing schedule denied as moot. Applications for expedited argument and *en banc* review denied. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[8] We may cite an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019 for its persuasive value. Pa.R.A.P. 126(b).

- 23 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/19