J-A25039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| AKEEM KEVIN WASHINGTON | : | |
| | : | |
| Appellant | : | No. 1655 MDA 2019 |

Appeal from the PCRA Order Entered September 11, 2019
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0000862-2015

BEFORE:  BOWES, J., OLSON, J., and KING, J.

DISSENTING MEMORANDUM BY KING, J.:          **FILED MARCH 23, 2021**

I respectfully disagree with the majority's analysis of Appellant's first issue concerning trial counsel's ineffectiveness for advising Appellant not to testify at trial.  In my opinion, trial counsel's advice was erroneous, counsel lacked a rational basis for his actions, and Appellant suffered prejudice.  Therefore, I would vacate and remand for a new trial, and I dissent.

To recap some of the relevant facts of this case, Tremayne Jones was the main witness for the Commonwealth at trial.  Mr. Jones testified that on December 29, 2014, he gave a statement to a corrections officer at Lancaster County Prison ("LCP") outlining Mr. Jones' conversations with Appellant while housed together at LCP on December 28th and 29th, 2014.  In this statement, Mr. Jones revealed how Appellant had solicited him to murder the police officers involved in Appellant's arrest.

Mr. Jones met with police on December 31, 2014, and gave another statement, in which he outlined two plans that Appellant had purportedly laid out for killing the officers. Mr. Jones also detailed in this statement the specifics of Appellant's arrest, as told to him by Appellant. On February 10, 2015, Mr. Jones testified at Appellant's preliminary hearing consistent with his December 31, 2014 statement to police.[1] While incarcerated at LCP, Mr. Jones also had a series of telephone conversations with his girlfriend in which Mr. Jones discussed Appellant's solicitation of him to murder the police officers involved in Appellant's arrest. The Commonwealth played these recorded conversations for the jury.

The Commonwealth argued at trial that Mr. Jones' statements to law enforcement, testimony at the preliminary hearing, and his conversations with his girlfriend were all consistent and very detailed. Specifically, the Commonwealth emphasized that Mr. Jones knew the names of Appellant's arresting officers, the name of the establishment outside which Appellant was arrested, and other facts that Mr. Jones could not have known unless Appellant had told him. The jury ultimately convicted Appellant of three counts of criminal solicitation for the three police officers involved in Appellant's arrest,

---

[1] At trial, Mr. Jones said he had no specific recollection of what he told the corrections officer on December 29, 2014 or the police on December 31, 2014, but he acknowledged that the statements were signed by him. Similarly, Mr. Jones said he had no specific recollection of his preliminary hearing testimony, but he admitted that he would have testified truthfully at that proceeding.

and acquitted him of a fourth count relative to the family members of one of the officers.

In his current PCRA petition, Appellant alleged, *inter alia*, trial counsel was ineffective in advising him not to testify at trial. The court held a PCRA hearing on April 10, 2019. At the PCRA hearing, trial counsel could not recall if he and Appellant had any pre-trial conversation regarding whether Appellant would testify, and if they did have such a conversation, it would have been "very brief." (**See** N.T. PCRA Hearing, 4/10/19, at 46-49). On the first day of trial, Appellant turned to trial counsel and said "this is not going well, I need to testify…because I need to be able to explain to the jury how [Mr. Jones] got this information"; at that point, Appellant and trial counsel discussed whether Appellant should testify. (**See id.** at 58-59). Appellant was "very animated" about wanting to testify and asked trial counsel to confer with his family about it as well. (**Id.** at 61).

Trial counsel knew Appellant had prior convictions for burglary and aggravated assault. (**Id.** at 63). Trial counsel told Appellant, "I don't want you to get on the stand because the prosecutor could bring up the aggravated assault conviction and then the jury…will think you're violent." (**Id.**) Trial counsel was concerned in particular with the aggravated assault conviction because the facts of that case involved a domestic incident which counsel "thought would be just too shocking if the jury were to hear that" where Appellant was on trial for solicitation to commit a violent act. (**Id.** at 64).

Trial counsel believed at the time that if Appellant were to testify, the conviction for aggravated assault **and the details surrounding that conviction** would come in for impeachment purposes. (***Id.*** at 65). Based on that belief, trial counsel advised Appellant not to testify. (***Id.***).

Trial counsel admitted that if the aggravated assault conviction was not admissible for impeachment purposes, "then there would have been no reason to advise [Appellant not to testify], specifically [because Appellant told counsel he] really want[ed] to get up there to explain to the jury how [Mr. Jones] got that [information]." (***Id.*** at 65-66). Even though the burglary conviction would have been admissible for impeachment purposes, trial counsel made clear that he "wasn't even thinking about the burglary conviction"; rather, trial counsel's "concern was the aggravated assault because of the specific details of that [conviction]." (***Id.*** at 66). Trial counsel expressly told Appellant and his family that Appellant should not testify because if he did, the jury would hear about his violence. Appellant trusted counsel's advice. (***Id.*** at 66-67).

On cross-examination, the Commonwealth asked trial counsel if he considered the risk that if Appellant had testified, the aggravated assault conviction might have come in if Appellant "opened the door" to its admission. (***Id.*** at 88). In response, trial counsel stated:

> I do not recall thinking of that risk because, again, I knew him pretty well. He's not a foolish man. And that he—he did tell me he primarily wanted to get on the stand not to testify that he's never been violent. I mean, he really wanted to focus on the alternative way that Mr. Jones could have gotten the evidence. So again, because of that, that

> was the narrowness of our conversation. Just candidly, it would not have occurred to me to fear that he was going to say something that opened the door to violence.

(*Id.* at 88-89).

With respect to his decision not to testify at trial, Appellant stated that he and trial counsel did not discuss whether Appellant would testify at any time before trial. (*Id.* at 113). Appellant admitted he did not tell trial counsel that he wanted to testify prior to trial. (*Id.*) During trial, when Appellant heard Mr. Jones' testimony, Appellant decided he "needed to get up there." (*Id.* at 114). Appellant "nudged" trial counsel and told him that Mr. Jones must have learned the information about Appellant's arrest through paperwork that Appellant had in their shared cell. (*Id.*) Appellant told trial counsel he "wanted to testify so they could know the whole story as to how any information that was on this paperwork was being transmitted by Mr. Jones." (*Id.* at 116-17). Appellant said there were numerous occasions when Mr. Jones was in his cell by himself and could have accessed Appellant's paperwork. (*Id.* at 117). Appellant believed Mr. Jones must have accessed his paperwork because in Mr. Jones' statement to police, he spelled correctly the officers' names involved with Appellant's arrest, and Appellant did not even know the officers' names. (*Id.* at 118).

After Appellant told trial counsel he wanted to testify, trial counsel said it "[w]asn't a good idea" based on Appellant's prior aggravated assault conviction. (*Id.* at 118-19). Trial counsel told Appellant that if he testified,

the jury would hear about Appellant's prior aggravated assault conviction; Appellant relied on trial counsel's advice. (*Id.* at 119). Appellant clarified that if trial counsel had told him the jury would not hear about the aggravated assault conviction, Appellant would have chosen to testify. (*Id.* at 125). Following the hearing and the submission of post-hearing briefs, the court denied PCRA relief on September 11, 2019.

As the majority acknowledges: "The right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution." *Commonwealth v. Nieves*, 560 Pa. 529, 534-35, 746 A.2d 1102, 1105 (2000). Significantly, "the presumption must always be against the waiver of a constitutional right," and we are bound to "place the burden of proving waiver on the Commonwealth." *Commonwealth v. Robinson*, 970 A.2d 455, 458 (Pa.Super. 2009) (*en banc*) (internal citations omitted). Thus, "[t]he decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel." *Nieves, supra* at 533, 746 A.2d at 1104. "The decision to forgo such a significant right…[cannot] be based on mistaken guidance." *Id.* at 535, 746 A.2d at 1105.

"[T]o sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave

- 6 -

specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *Id.* at 534, 746 A.2d at 1104.

> [T]he appropriate standard for assessing whether a defendant was prejudiced by trial counsel's ineffectiveness regarding the waiver of his right to testify is whether the result of the **waiver proceeding** would have been different absent counsel's ineffectiveness, not whether the outcome of the trial itself would have been more favorable had the defendant taken the stand.

*Commonwealth v. Walker*, 110 A.3d 1000, 1005 (Pa.Super. 2015), *appeal denied*, 633 Pa. 756, 125 A.3d 777 (2015) (emphasis in original).

A trial court is not required to conduct a colloquy to determine whether a defendant has made a knowing, intelligent and voluntary waiver of his right to testify.[2] *Commonwealth v. Todd*, 820 A.2d 707, 712 (Pa.Super. 2003). Nevertheless, a criminal defendant must understand his decision not to testify if not by colloquy, then by the presumed competent advice of counsel. *See id.* (holding appellant's waiver of right to testify was knowing, intelligent and voluntary, where court credited counsel's testimony that he discussed right to

---

[2] Here, the record shows the trial court did not conduct a waiver colloquy. "A waiver colloquy is a procedural device; it is not a constitutional end or constitutional 'right.'" *Commonwealth v. Mallory*, 596 Pa. 172, 189, 941 A.2d 686, 697 (2008), *cert. denied*, 555 U.S. 884, 129 S.Ct. 257, 172 L.Ed.2d 146 (2008). Although "an on-the-record colloquy is a useful procedural tool whenever the waiver of any significant right is at issue, constitutional or otherwise…, the colloquy does not share the same status as the right itself." *Id.* at 190, 941 A.2d at 697. Although I think as a "best practice" the trial court should conduct a waiver colloquy to confirm a defendant's decision not to testify is knowing, intelligent, and voluntary, the trial court's failure to do so in this case does not afford Appellant any relief.

testify with appellant on numerous occasions and counsel's advice was reasonable).

In **Nieves, supra**, trial counsel advised the defendant to waive his right to testify by informing the defendant that if he took the stand, he would be impeached with his prior criminal record, which included two firearms offenses and at least two drug trafficking offenses. The defendant claimed that counsel's advice constituted ineffective assistance, and our Supreme Court agreed "such advice was clearly unreasonable as it is well-established that evidence of prior convictions can only be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement." **Nieves, supra** at 534, 746 A.2d at 1104-05. Because the defendant's prior convictions did not involve dishonesty or false statements, they would not have been admissible to impeach the defendant's credibility. As the defendant's decision not to testify was based solely on this erroneous advice, the Court held that his decision "cannot be deemed knowing or intelligent." **Id.** at 534, 746 A.2d at 1105.

The Supreme Court also expressly rejected the Commonwealth's argument that trial counsel's advice not to testify was reasonable where the Commonwealth could have cross-examined the defendant regarding the motive for the killing at issue, which was allegedly a drug debt, and thereby introduced the prior drug convictions. The Supreme Court emphasized that although trial counsel mentioned he was initially concerned with "opening the

door to evidence of drug activity," trial counsel later clarified that was not the reason for his advice not to testify. *Id.* at 535, 746 A.2d at 1105. Rather, trial counsel's testimony made clear his advice was based solely on counsel's belief that the defendant would be impeached with his prior convictions. Because that advice was clearly erroneous, the Supreme Court held "that trial counsel's advice was so unreasonable as to vitiate [the defendant's] knowing and intelligent decision not to testify." *Id.* at 535-37, 746 A.2d at 1105-06. Therefore, the Court remanded for a new trial.

In ***Commonwealth v. Moore***, 715 A.2d 448 (Pa.Super. 1998), a jury convicted the defendant of one count each of attempted murder and aggravated assault, and two counts each of simple assault and robbery. In his first PCRA petition, the defendant claimed trial counsel had rendered ineffective assistance by permitting the introduction of evidence relating to the defendant's criminal history. Specifically, the defendant testified in his own defense at trial, and trial counsel elicited testimony from the defendant that he had prior convictions for aggravated assault, forgery, and two robberies. The defendant also explained that he was currently on parole for robbery. The PCRA court found that trial counsel was ineffective for allowing such evidence to come in and granted the defendant a new trial. ***See id.*** at 450-51.

The Commonwealth appealed, and this Court affirmed the award of a new trial, in part due to trial counsel's ineffectiveness. This Court explained

that while the Commonwealth could have introduced the defendant's robbery and forgery convictions as *crimen falsi* to impeach his testimony, the defendant's aggravated assault conviction could not have been used for impeachment purposes. *Id.* at 452. This Court stated: "Here, because [the defendant's] previous aggravated assault conviction is not in the nature of *crimen falsi* and does not fall within the exceptions related to other crime evidence, the Commonwealth could not have introduced this conviction." *Id.* This Court further held that counsel lacked a reasonable basis for his actions in permitting the introduction of such evidence, and that it could not "fault the PCRA court's finding that [the defendant] suffered prejudice due to trial counsel's ineffectiveness[.]" *Id.*

Instantly, it is undisputed that aggravated assault is not inherently *crimen falsi*. Nevertheless, the majority concludes that where a crime is not inherently *crimen falsi*, we must also inspect the underlying facts that led to the conviction to determine if dishonesty or false statement facilitated the commission of the crime. *See Commonwealth v. Davis*, 17 A.3d 390, 395-96 (Pa.Super. 2011), *appeal denied*, 611 Pa. 678, 29 A.3d 371 (2011). Although the majority concedes that at trial, the burden of proof is upon the party offering the conviction during cross-examination (*see id.* at 396), it holds that Appellant bore the burden at the PCRA hearing to prove that the facts underlying his aggravated assault conviction **did not** involve falsehood or dishonesty. In other words, the majority essentially requires Appellant to

- 10 -

prove a negative to succeed on his ineffectiveness claim. In this respect, I must depart from the majority's viewpoint.

Here, nothing in the record suggests, and the Commonwealth does not argue, that dishonesty or false statement facilitated commission of Appellant's prior aggravated assault conviction. To the contrary, the record indicates that Appellant's aggravated assault conviction was for slashing the neck of his then-girlfriend.[3] (*See* N.T. Sentencing, 10/30/15, at 8). While heinous, Appellant's actions constitute a crime of violence, not one of dishonesty or falsehood. *See, e.g., Commonwealth v. Hall*, 867 A.2d 619 (Pa.Super. 2005), *appeal denied*, 586 Pa. 756, 895 A.2d 549 (2006) (noting conviction for aggravated assault is crime of violence, not of falsity or deceit; since it does not reflect upon one's veracity it could not have been used to impeach witness's testimony); *Commonwealth v. Bracey*, 831 A.2d 678, 682 (Pa.Super. 2003), *appeal denied*, 577 Pa. 685, 844 A.2d 551 (2004) (stating: "[W]e detect no basis upon which to find that the trial judge erred or abused his discretion in refusing to allow defense counsel to cross examine the victim about his prior conviction for aggravated assault"; victim's prior aggravated assault conviction was not conviction involving dishonesty or false statements

---

[3] At the PCRA hearing, Appellant and trial counsel described Appellant's aggravated assault conviction as a "domestic incident." While the facts of Appellant slashing his then-girlfriend's neck did not come up at the PCRA hearing, those facts are of record in the sentencing proceeding. Thus, I disagree with the majority's statement that the record contains no evidence regarding the circumstances of Appellant's aggravated assault conviction.

- 11 -

and is, therefore, irrelevant to issue of his veracity); *Moore, supra*; *Commonwealth v. Grimm*, 378 A.2d 377, 380 (Pa.Super. 1977) (explaining: "[C]onvictions showing assaultive or disorderly conduct do not involve false statement or dishonesty. **They are completely irrelevant to the issue of the witnesses' veracity**. It was, therefore, improper for the court to allow this form of impeachment") (emphasis added).

I acknowledge that in some instances the underlying facts of a crime can be used to admit a prior conviction that is not inherently *crimen falsi*. *See Davis, supra*. I emphasize, however, that neither our Supreme Court in *Nieves* nor this Court in *Moore* required the defendants in those cases to produce evidence that the underlying facts of their respective crimes did not transform their prior convictions into *crimen falsi* offenses, to succeed on their ineffectiveness claims. *See Nieves, supra*; *Moore, supra*. In other words, neither the *Nieves* Court nor *Moore* Court required the defendants to prove a negative to demonstrate ineffectiveness of counsel.

I also recognize that Appellant had a burglary conviction on his criminal record at the time of trial. Unlike aggravated assault, burglary is a *crimen falsi* offense. *See Commonwealth v. Cole*, 227 A.3d 336, 340 (Pa.Super. 2020) (explaining burglary and theft are *crimen falsi* offenses). Appellant's prior burglary conviction (which was graded a first-degree felony) constitutes a crime of violence. *See Commonwealth v. Chester*, 627 Pa. 429, 445, 101 A.3d 56, 65 (2014) (stating: "[I]t is an offender's non-privileged entry, which

- 12 -

invites dangerous resistance and, thus, the possibility of the use of deadly force against either the offender or the victim, that renders burglary a violent crime, not the behavior that is actually exhibited during the burglary"). Thus, had trial counsel advised Appellant not to testify to prevent the jury from hearing about Appellant's burglary conviction, I would have agreed with the PCRA court's analysis that counsel's advice was reasonable.

Nevertheless, trial counsel made clear at the PCRA hearing that his advice against testifying was based **solely** on fear of Appellant's prior aggravated assault conviction coming in for impeachment purposes and the jury hearing details about that offense. (*See* N.T. PCRA Hearing at 64-65). In fact, counsel expressly stated that he "wasn't even thinking about the burglary conviction." (*Id.* at 66). Because I do not believe Appellant's prior aggravated assault conviction was admissible for impeachment purposes as a *crimen falsi* offense, I would conclude that counsel's advice in this respect was erroneous.[4] *See Nieves, supra*.

Alternatively, counsel's advice for Appellant not to testify to shield the jury from hearing about the **facts** of the aggravated assault conviction was improper in and of itself. Only the underlying *crimen falsi* conviction is

---

[4] The fact that trial counsel might have responded to hypothetical questions concerning whether counsel believed his advice to Appellant was erroneous is not the proper inquiry in my view. This Court can decide as a matter of law whether counsel's advice was legally sound, and whether counsel rightly or wrongly believed his advice was improper is immaterial.

admissible for impeachment purposes at trial; the facts underlying that conviction are not admissible. *See* Pa.R.E. 609(a) (stating that for purposes of attacking credibility of any witness, evidence that witness has been convicted of crime shall be admitted if it involved dishonesty or false statement); *Commonwealth v. Creary*, 201 A.3d 749, 754 (Pa.Super. 2018) (explaining that when defendant is impeached through introduction of prior conviction, witness's opponent may introduce only name, time, and place of crime and punishment received; "we employ this limitation to minimize the potential prejudice and distraction of issues already inherent in the mention of prior offenses"; in prior cases, **we have precluded party seeking to impeach witness from using facts underlying prior conviction**, in circumstances where such facts would increase risk of prejudice to party or confusion of issues) (internal citation omitted). Consequently, even if Appellant's aggravated assault conviction was admissible for impeachment purposes as a *crimen falsi* offense based on its underlying facts, counsel's advice to Appellant not to testify was still erroneous where counsel told Appellant that the "facts" and "details surrounding" his aggravated assault conviction could come in at trial and would be "too shocking" for the jury to hear about. (*See* N.T. PCRA Hearing at 64-65).

Additionally, trial counsel admitted that when advising Appellant not to testify, counsel did not consider the possible risk of Appellant "opening the door" to admission of the aggravated assault conviction, based on Appellant's

reasons for wanting to testify (to discredit Mr. Jones' version of the events) and because Appellant was "not a foolish man." (*Id.* at 88-89). Thus, like the attorney in *Nieves*, trial counsel acknowledged that he did not have an alternative reasonable strategy for advising Appellant not to testify. *See Nieves, supra* at 537, 746 A.2d at 1106.

My review of Appellant's testimony at the PCRA hearing confirms that, but for trial counsel's erroneous advice concerning admission of the aggravated assault conviction, Appellant would have testified. (*See* N.T. PCRA Hearing at 113-26). *See also Walker, supra*. The speculative nature of Appellant's testimony concerning whether Mr. Jones actually accessed Appellant's paperwork is of no moment; the relevant inquiry is whether Appellant's decision not to testify would have been different absent counsel's ineffectiveness. *See id.* Under these circumstances, Appellant has established trial counsel's ineffectiveness in connection with Appellant's waiver of his right to testify. *See Nieves, supra*. Therefore, I would vacate the order denying PCRA relief and remand for a new trial.[5] Based on my

---

[5] I recognize that Mr. Jones' death might hamper the Commonwealth's ability to prove its case upon a new trial. The Commonwealth argued before the PCRA court that even if Appellant could prove trial counsel's ineffectiveness, the court should have dismissed Appellant's PCRA petition due to the prejudice a new trial would cause the Commonwealth. While the PCRA court acknowledged the substantial prejudice a new trial would cause the Commonwealth, the court noted that Mr. Jones died during the pendency of Appellant's direct appeal. Thus, there was no causal connection between the prejudice to the Commonwealth and the filing of Appellant's original PCRA

disposition of Appellant's first issue, I would not have reached Appellant's remaining claims of trial counsel's ineffectiveness.

_____

petition to warrant dismissal of Appellant's PCRA petition on that basis. (**See** PCRA Court Opinion, filed 9/11/19, at 27). **See also** 42 Pa.C.S.A. § 9543(b) (stating court shall dismiss PCRA petition "if it appears at any time that, because of delay in filing the petition, the Commonwealth has been prejudiced either in its ability to respond to the petition or in its ability to re-try the petitioner"). The Commonwealth does not challenge this aspect of the PCRA court's reasoning on appeal.