J-S04013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRONE WROTEN | : | |
| | : | |
| Appellant | : | No. 83 EDA 2021 |

Appeal from the Judgment of Sentence Entered September 17, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0004610-2019

BEFORE:   MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 12, 2023**

Tyrone Wroten (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of indecent assault without consent and simple assault.[1]  We affirm.

The trial court recounted the facts presented at trial as follows:

> On June 7, 2019, at approximately 11:28 p.m., police arrived at an apartment located at 1350 N. 10th Street in response to a 911 call from [A.C. (the Victim)].  …  When police arrived, Appellant was in the hallway outside of the apartment.  (N.T. 1/24/19 at 45:8-11.)  A responding officer had a taser out and told Appellant to get on the ground.  (**Id.** at 107:7-16.)  During a search incident to arrest, police recovered various narcotics and paraphernalia from Appellant.  (**Id.**)
>
> After[] police placed Appellant into custody they interviewed the [Victim].  (**Id.** at 82:12-17.)  The [Victim] told police how she

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3126(a)(1) and 2791(a).

saw Appellant [with whom the Victim was acquainted] at a vigil down the street and went with him to see his [new] apartment. (*Id.* at 15:15-23,16:7-9,17:11-15, and 19:2-10.) The [Victim] testified that, when they got to the apartment, Appellant put some items away and went into the bathroom. (*Id.* at 23:18-24:20.) Appellant came out of the bathroom without a shirt on looking "really weird" and "sweating real[ly] bad." (*Id.* at 25:16-21 and 27:14-28:2.) Then Appellant attacked the [Victim]. (*Id.* at 45:19-25.)

Appellant started choking the [Victim] with one hand, squeezing so tightly it was hard for her to breathe. (*Id.* at 30:4-11 and 31:12-32:3.) The [Victim] testified that Appellant used his other hand to pull her pants down and digitally penetrated her anus and vagina. (*Id.* at 30:13-18.) However, in the body worn camera footage [taken by the police], the [Victim] is heard telling police that Appellant "tried" to digitally penetrate her. (*Id.* at 139:17141:8 and 165:3-6.) Regardless, the [Victim] kept tightening up her legs to try and stop Appellant. (*Id.* at 70:18-24.) Appellant also sucked on the Victim's breast. (*Id.* at 110:18-19.) Appellant told the [Victim], who was trying to scream, to: "shut the eff up" and that he was going to make her perform fellatio on him. (*Id.* at 31:22-32:2 and 36:5-10.) At one-point, Appellant punched the [Victim] in her mouth and gave her a "busted lip." (*Id.* at 48:9-14.)

The [Victim] testified that she did not consent to any of the physical contact. (*Id.* at 49:11-18.) During the attack, the [Victim] tried to shove Appellant off her, and eventually bit Appellant on his bare chest. (*Id.* at 30:13-18.) Appellant jumped up and started looking all around, grabbed his shirt and attempted to leave the apartment. (*Id.* at 36:23-37:7.)

Trial Court Opinion, 1/6/22, at 3-4.

The Commonwealth charged Appellant at docket MC-51-CR-0015243-2019 (sexual assault prosecution) with offenses related to the sexual assault. The Commonwealth charged Appellant at docket MC-51-CR-0015244-2019 (drug prosecution) with offenses related to the drugs found incident to

Appellant's arrest, as well as disorderly conduct.[2]  The trial court summarized

the ensuing procedural history:

> After [a] June 27, 2019, preliminary hearing, the Philadelphia Municipal Court held the sexual assault [prosecution] for court.  …
>
> [On] July 11, 2019, [the] Municipal Court trial date for the drug [prosecution], the Commonwealth requested a continuance. The case was listed for trial on September 4, 2019.  On that day, the Commonwealth offered Appellant a [n]egotiated [g]uilty [p]lea to [d]isorderly [c]onduct with no further penalty.  In exchange the Commonwealth withdrew the charges of [p]ossession of a [c]ontrolled [s]ubstance and [p]araphernalia. Appellant accepted the Commonwealth's offer.
>
> In this case [related to the sexual assault], on September 25, 2019, Appellant filed a [m]otion to [d]ismiss pursuant to [18 Pa.C.S.A. §] 110.  On October 2, 2019, the Commonwealth filed its [r]esponse.  On October 25, 2019, the [trial c]ourt heard arguments on the [m]otion and held it under advisement.  On October 31, 2019[,] the [trial c]ourt denied the [m]otion.

*Id.* at 2.

The trial court held a bench trial on January 24, 2020, and thereafter

convicted Appellant of indecent assault without consent and simple assault.[3]

On September 17, 2020, the trial court sentenced Appellant to an aggregate

9 - 23 months of incarceration with immediate parole.  Appellant filed post-

---

[2] 18 Pa.C.S.A. § 5503(a)(4).

[3] The trial court found Appellant not guilty of attempted rape, aggravated indecent assault without consent, terroristic threats, and strangulation.

sentence motions which the trial court denied on December 20, 2020. This timely appeal followed.[4]

Appellant presents three issues for review:

1. Did the trial court err when it denied [Appellant's m]otion to [d]ismiss under the [c]ompulsory [j]oinder [c]lause?

2. Did the trial court err when it sustained [an objection to] defense counsel's question regarding the [Victim's] [i]ntimidation of a [w]itness conviction?

3. Did the trial court err by not granting a new trial where the weight of the evidence should have resulted in an acquittal?

Appellant's Brief at 5.

In his first issue, Appellant contends the trial court erred in denying his motion to dismiss charges pursuant to the compulsory joinder clause. Appellant's Brief at 10-15. Appellant maintains his cases at separate dockets

arose from the same criminal episode. The acts giving rise to the [drug prosecution] occurred during the arrest for the [sexual assault prosecution], the witnesses were the same, there were overlapping issues of witness credibility relevant in both cases, and the actions [in the drug prosecution] were relevant [to] a guilty state of mind in the [sexual assault prosecution].

*Id.* at 9.

The Commonwealth counters that Appellant "failed to demonstrate at the [trial] court hearing that his [guilty plea in the drug prosecution] was based on facts that were from the same criminal episode as those in the

_____

[4] Appellant and the trial court have complied with Pa.R.A.P. 1925.

[sexual assault] prosecution." Commonwealth Brief at 11 (quotation marks omitted).

Appellant's claim that the trial court incorrectly declined to dismiss his charges under the compulsory-joinder rule presents a question of law. "Consequently, our scope of review is plenary, and our standard of review is *de novo*." ***Commonwealth v. Perfetto***, 207 A.3d 812, 821 (Pa. 2019).

> The purpose of the compulsory joinder statute is twofold: (1) to protect a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) to ensure finality without unduly burdening the judicial process by repetitious litigation.

***Commonwealth v. Fithian***, 961 A.2d 66, 75-76 (Pa. 2008) (citations and quotation marks omitted).

The compulsory joinder statute provides in relevant part:

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

* * *

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense[.]

18 Pa.C.S.A. § 110(1)(ii).

Section 110(1)(ii) contains the following four requirements which, if met, preclude a subsequent prosecution due to a former prosecution for a different offense:

(1) the former prosecution must have resulted in an acquittal or conviction;

(2) the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution;

(3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and

(4) the current offense occurred within the same judicial district as the former prosecution.

*Fithian*, 961 A.2d at 72 (citations omitted).

Instantly, the parties dispute the applicability of the second prong. *See* Appellant's Brief at 11; Commonwealth Brief at 11. To determine whether the current prosecution is based on the same criminal conduct or arose from the same criminal episode, the court must look at the temporal and logical relationship between the charges:

Generally, charges against a defendant are clearly related in time and require little analysis to determine that a single criminal episode exists. However, in defining what acts constitute a single criminal episode, **not only is the temporal sequence of events important, but also the logical relationship between the acts must be considered.**

*Commonwealth v. Reid*, 77 A.3d 579, 582 (Pa. 2013) (citation omitted, emphasis added).

In determining whether offenses are logically related, courts should "inquire as to whether there is a substantial duplication of factual[ ] and/or legal issues presented by the offenses." ***Id.*** (citation omitted). If duplication exists, "then the offenses are logically related and must be prosecuted at one trial." ***Id.*** (citation omitted). However, "a mere *de minimis* duplication of factual and legal issues is insufficient to establish a logical relationship between offenses. Rather[,] what is required is a substantial duplication of issues of law and fact." ***Id.*** at 582-83 (citation omitted).

Here, the trial court explained:

> In ***Commonwealth v. Stewart***, [] 473 A.2d 161 ([Pa. Super.] 1984), the Superior Court held that Section 110 was not a bar to a subsequent prosecution for drug related charges based upon evidence that had been discovered at the same time and place as evidence that supported prior theft[-]related charges. There, the [C]ourt found that "[t]here is no logical relationship between the crimes of theft by receiving stolen property and possession of a controlled substance. They are defined by separate statutes and are intended to prevent different evils. There is no similarity of issues involved in proving these distinct offenses." ***Id.*** at [] 164.
>
> Here, as in ***Stewart***, there is a temporal relationship but not a logical one. There is no substantial duplication of factual, and/or legal issues presented by the offenses. Appellant was charged in the first prosecution with [s]imple [p]ossession of [d]rugs, [u]se of [d]rug [p]araphernalia, and [d]isorderly [c]onduct. Different facts from different witnesses are required to prove the charges in this case where Appellant is charged with [assault and sexual offenses]. These offenses are defined by separate statutes and are intended to prevent different evils. "There is no similarity of issues involved in proving these distinct offenses."[FN] ***Id.*** at [] 164.
>
> > [FN] Although it may appear that the [d]isorderly [c]onduct charge upon which Appellant was convicted in the [drug] prosecution could factually relate to the

> charges here, it does not. There is nothing on the record to indicate that the disorderly conduct charge required the [Victim's] testimony. Moreover, the [d]isorderly [c]onduct conviction could not be premised upon acts against the [Victim] that occurred inside Appellant's apartment. ***See Commonwealth v. Lawson***, 759 A.2d 1, 5 (Pa. Super 2000).

Trial Court Opinion, 1/6/22, at 7-8 (footnote in original).

The trial court did not err. There is nothing in the record to support Appellant's claim that his disorderly conduct charge in the drug prosecution arose from the same events in the sexual assault prosecution, or that it involved the same witnesses.[5] Appellant acknowledged at the hearing on his motion to dismiss that the events which gave rise to the drug prosecution occurred when Appellant "was arrested in the hallway" and the Victim "appeared to be back in [Appellant's] abode." N.T., 10/25/19, at 3. The Commonwealth noted:

> We have one officer who did a [report] for that sexual assault. … He was not involved in the narcotics charges. In fact[,] that was a different [report] and … it went to a different police detective division. The drugs … went to Central Detectives. The [sexual assault prosecution] went to Special Victims.

***Id.*** at 13.

In sum, there is no "substantial duplication of factual and/or legal issues presented by the offenses," and no logical relationship between the

---

[5] Appellant did not attach any documentation from the drug prosecution to his Amended Motion to Dismiss and did not enter any exhibits at the hearing. ***See*** Amended Motion to Dismiss, 9/25/19, at 1-5; N.T., 10/25/19, at 1-14.

prosecutions. ***Reid***, 77 A.3d at 582. Appellant's first issue does not merit relief.

In his second issue, Appellant contends the trial court erred when it sustained the Commonwealth's objection to defense counsel's questioning of the Victim about her conviction for witness intimidation. Appellant's Brief at 16-18. Appellant specifically claims that the trial court erred in finding that intimidation of a witness is not *crimen falsi*. ***Id.***

The Commonwealth observes that there is no Pennsylvania caselaw "addressing the question of whether intimidation of a witness is a *crimen falsi* offense." Commonwealth's Brief at 17 n.4. However, the Commonwealth argues that even if Appellant is correct about witness intimidation being a *crimen falsi* offense, any error would be harmless. ***Id.*** at 14. We agree.

> Our standard of review regarding the admissibility of evidence is an abuse of discretion. The admissibility of evidence is a matter addressed to the sound discretion of the trial court and ... an appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.

***Commonwealth v. Collins***, 70 A.3d 1245, 1251–52 (Pa. Super. 2013) (citations omitted).

With respect to a witness's criminal history, this Court has explained:

> Pursuant to Pennsylvania Rule of Evidence 609, **evidence that a witness has been convicted of a crime involving dishonesty or false statement must be admitted** if the conviction or release from confinement occurred within the last ten years. When a defendant is impeached through introduction of prior convictions, the witness's opponent may only introduce the name,

time, and place of the crime and the punishment received. We have applied this limitation to all witnesses, not merely to defendants, and we employ this limitation to minimize the potential prejudice and distraction of issues already inherent in the mention of prior offenses.

In prior cases, we have precluded a party seeking to impeach a witness from using the facts underlying a prior conviction, in circumstances where such facts would increase the risk of prejudice to a party or confusion of the issues.

*Commonwealth v. Creary*, 201 A.3d 749, 754 (Pa. Super. 2018) (citations omitted, emphasis added).

The harmless error doctrine "reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Hairston*, 84 A.3d 657, 671 (Pa. 2014). Further:

Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* at 671–72.

Here, defense counsel questioned the Victim as follows:

Q. You said you [have] never been [] through anything like this?

A. No, I haven't.

Q. All right. Well, isn't it true, ma'am, that you're currently under parole for — on parole for a burglary?

A. I'm on parole. Yes, I am.

Q. And you got sentenced to 11 and a half to 23 months, plus five years['] probation on that?

A. Correct.

[THE COMMONWEALTH]: I'm going to object, Your Honor. We can stipulate to that. When she said she had never been [] through anything like that, she was clearly referring to a sexual assault.

THE COURT: Counsel, I don't need you to testify. You can ask her what she meant by that. You can clarify.

[DEFENSE COUNSEL]: Yeah.

Q. You were sentenced to 11 and a half to 23 months, plus five years['] probation for a burglary, right?

A. Correct.

Q. You pled guilty, right?

A. Correct.

Q. So you were out there robbing people's houses, right?

A. No I didn't—

THE COURT: Counsel, that's sustained.

Q. Did you have to give a statement in that burglary case? Did the detectives try to talk to you about what happened?

A. No. The detectives didn't talk to me about what happened during the situation.

Q. Okay.

* * *

Q. All right. So I just asked you about the burglary.

A. Correct.

Q. I'm going to ask you another question. Are you on parole for intimidating a witness, also?

A. **All that is that one case.**

Q. Okay. So that was all out of the burglary?

A. Correct.

Q. And you also pled guilty to intimidating a witness and you're on parole for that, too, right?

A. **That's all one case**.

> [THE COMMONWEALTH]: I'm going to object to the relevance. That's not a *crimen* [*falsi*] offense.
>
> [DEFENSE COUNSEL]: I think it is a *crimen* [*falsi*] offense.
>
> THE COURT: Sustained. I don't know that it is.

N.T., 1/24/20, at 128-30, 132-33 (emphasis added, some paragraphs altered).

The trial court subsequently explained:

> Here, the [c]ourt considered the [Victim's] … testimony regarding the attack. The [c]ourt also heard the recording of her 911 call to police. (N.T. 1/24/20 at 37:15-38:8.) Furthermore, the [c]ourt watched the body worn camera footage from the arresting officer. (*Id.* at 139:17-141:8.) The [c]ourt listened to the Appellant's testimony. (*Id.* at 143:10-161:9) And[] the [c]ourt considered [the Victim's] prior *crimen falsi* conviction based upon a burglary charge, which related to the intimidation of witness conviction. (*Id.* 128:20-129:5.) Considering the overwhelming evidence against Appellant upon which the [c]ourt based its judgment[, and] after giving consideration to the [Victim's] *crimen falsi* conviction, the [c]ourt's decision to sustain the Commonwealth's objection to the admission of another *crimen falsi* charge that was part of the burglary conviction did not result in any prejudice to Appellant.

Trial Court Opinion, 1/6/22, at 14.

- 12 -

Upon review, we agree that any error would be harmless. The testimony was cumulative, and Appellant has not shown prejudice. ***See Commonwealth v. Sattazahn***, 763 A.2d 359, 364-65 (Pa. 2000) (concluding trial court did not commit reversible error by limiting defense counsel's impeachment of a witness where evidence was cumulative of other impeachment evidence and appellant failed to show prejudice). Appellant's second issue does not merit relief.

In his third and final issue, Appellant argues his conviction was against the weight of the evidence. Appellant's Brief at 18-20. Appellant asserts "the verdict in this case rested solely upon the testimony of [the Victim, which] "was inconsistent, incredible, and contrary to the evidence[.]" ***Id.*** at 18.

"A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." ***In re A.G.C.***, 142 A.3d 102, 109 (Pa. Super. 2016) (citation omitted). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth. v. Widmer***, 744 A.2d 745, 753 (Pa. 2000) (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination of whether the verdict is against the weight of the evidence.

*Id.* (citation omitted). This standard applies even when the trial judge sat as the finder of fact. **See Commonwealth v. Konias**, 136 A.3d 1014, 1022 (Pa. Super. 2016) (reviewing trail court's exercise of discretion in a weight claim on appeal from a non-jury verdict).

Here, the trial court summarized the Victim's testimony in explaining its rejection of Appellant's weight issue. **See** Trial Court Opinion, 1/6/22, at 9-10. It is evident the trial court found the Victim to be credible. **Id.** The trial court, as factfinder, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Roberts**, 133 A.3d 759, 767 (Pa. Super. 2016). Accordingly, the trial court acted within its discretion in finding the verdict was not contrary to the weight of the evidence. Appellant's final issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2023