2018 PA Super 349

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JASON CREARY | : | |
| Appellant | : | No. 1512 EDA 2016 |

Appeal from the Judgment of Sentence December 1, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013973-2014,
CP-51-CR-0013975-2014

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

OPINION BY McLAUGHLIN, J.:                    **FILED DECEMBER 20, 2018**

Jason Creary appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas. He maintains the trial court erred in: failing to hold an evidentiary hearing to address his claim that the Commonwealth violated Pennsylvania Rule of Criminal Procedure 573(B)(1)(a) and **_Brady v. Maryland_**, 373 U.S. 83 (1963); denying the jury's request to review a police report during deliberations; and permitting James Bradpher ("Complainant") to testify regarding the underlying facts of a prior _crimen falsi_ conviction. We affirm.

Creary was charged in October 2014, with burglary and related offenses. At his jury trial, Complainant testified that on October 15, 2014, two men approached him outside his home, pressed a gun to his hip, and forced him into the house. N.T., 8/24/15, at 21, 24-25. The men took cash, a money order, and a pack of cigarettes from his pockets. **_Id._** at 24-25. Complainant

reported the incident to police and identified the assailants as Emil Rogers and Creary. *Id.* at 31. Officer Jawchyi Wang prepared the initial police report, which does not identify Creary by name. *See* N.T., 8/24/15, at 31-34. However, subsequent police reports do. *Id.* at 44-46. Complainant testified that Rogers told him that if he told "anybody what happened . . . there's going to be problems." *Id.* at 27. He further testified that Creary used crutches during the incident. *Id.* at 25. He said Rogers was holding a .45 and Creary was holding a revolver. *Id.* at 26. He based his knowledge of the gun types on a video game. *Id.*

Complainant also testified at trial that two days after the first incident, on October 17, 2014, Creary and Rogers attacked him again as he was returning from Rite Aid. *Id.* at 37-38, 96. Creary accused Complainant of "snitching," and Rogers then hit Complainant across his forehead with a metal crutch. *Id.* at 38, 111-12. Rogers and Creary struck Complainant "about 12, 13 times." *Id.* at 38-39. Complainant reported the assault to the police, again identifying Rogers and Creary.[1] *Id.* at 43-44. On cross-examination, Complainant admitted that he had a prior conviction for theft of services. *Id.* at 92. On re-direct, he explained that this conviction occurred after he used his transpass to get both him and another individual onto a bus. *Id.* at 141.

---

[1] Complainant testified before the grand jury that he was beaten with a crutch and baseball bat, not hands or fists, by three people. N.T., 8/24/2015, at 105-06, 152-53. Further, in his statement to the police, he stated that it "felt like four guys" beat him. *Id.* at 129, 151-52.

- 2 -

During Complainant's trial testimony, he stated, for the first time, that two other individuals were in his house during the first incident. N.T., 8/24/15, at 66, 114. He said they were upstairs and did not witness the incident. *Id.* However, Officer Wang and Detective Dennis Slobodian testified that Complainant never told them that other individuals were home. N.T., 8/25/15, at 28, 68. Creary asked the trial court to give a missing-witness jury instruction, and the trial court denied the request. The court stated, "I think it was agreed upon that the Commonwealth only found out about the two witnesses to your knowledge when the complaining witness was on the stand." N.T., 8/27/15, at 4. Neither party disputed this statement.

Police officers obtained and executed a search warrant for Creary's residence and found incriminating evidence. They prepared a property receipt showing they located a clear sandwich bag containing "loose shotgun rounds, .410, the smaller shotgun rounds, and ammunition for a .44" under Creary's mattress. N.T., 8/25/15, at 11-12. They also recovered a bulletproof vest and photographed a pair of crutches. *Id.* at 12. Detective Slobodian testified that he had made a mistake on the property receipt, and that the bullets located were .45 bullets, rather than .44 caliber. He explained that .45 caliber was the "type of gun that was . . . used" during the first incident. *Id.* at 33-34.

In the defense case, Creary presented three alibi witnesses – his mother, sister, and brother. Each testified that Creary was home during the time of the first incident. *Id.* at 98, 127, 141.[2]

After the close of evidence and instructions to the jury, the jury retired to deliberate and asked to see Officer Wang's report. The trial court denied this request. N.T., 8/27/15, at 32. It also denied counsel's request to read the report to the jury. *Id.* The court told the jury: "I think it's safe to say that Officer Wang's report was referenced ten times, if not more, during the course of this trial. So you have to rely on your own recollection of that." *Id.* at 39.

The jury convicted Creary of burglary, conspiracy to commit burglary, aggravated assault (attempt to cause serious bodily injury), conspiracy to commit aggravated assault, simple assault, and retaliation against a witness.[3] The trial court later sentenced Creary to five to ten years' incarceration and four years' probation. Creary filed post-sentence motions, which were denied by operation of law on April 12, 2016. Creary filed this timely appeal.[4]

Creary raises the following issues:

_____

[2] Creary's co-defendant also testified in his own defense.

[3] 18 Pa.C.S.A. §§ 3502(a)(1), 903, 2702(a)(1), 2701(a), 4953(a).

[4] The trial court did not send its Pennsylvania Rule of Appellate Procedure 1925(a) opinion or the trial court record to this Court until December 8, 2017. Further, this Court granted Creary one extension of time to file an appellate brief, Order, filed Dec. 26, 2017, and granted the Commonwealth three extensions of time to file an appellate brief. Order, filed Apr. 20, 2018; Order, filed June 21, 2018; Order, filed July 25, 2018.

(1) Should the Court order a new trial for [Appellant] based on the fact that two additional witnesses whose identity had never been disclosed prior to trial were inside of the house with the Complainant when [Appellant] allegedly committed the Burglary?

(2) Did the Court err by not sending back for the jury to review Police Officer Wang's report (Commonwealth Exhibit 1) after the jury asked to review the report and it was a critical piece of the defense case?

(3) Was the objection improperly overruled when the District Attorney was permitted to question [C]omplainant on the underlying facts of his *crimen falsi* conviction, which is not permitted by the Rules of Evidence.

Creary's Br. at 2.

Creary waived his first issue, and even if he had not waived it, it would not warrant relief. In his statement of questions presented and in his Pennsylvania Rule of Appellate Procedure 1925(b) statement, Creary maintained the trial court erred in not ordering a new trial. He claimed a new trial was required because the Commonwealth failed to disclose the existence of two witnesses, in violation of **Brady** and Pennsylvania Rule of Criminal Procedure 573(B)(1)(a). In the argument section of his brief, he shifts his claim to an argument that the trial court should have ordered an evidentiary hearing to address this claim. He does not argue he is entitled to a new trial based on the record as it exists.

Regarding his argument that Common Pleas Court should have held a hearing – assuming his Rule 1925(b) statement preserved it[5] - he committed waiver by not preserving that specific argument in the trial court. We have

---

[5] **See** Pa.R.A.P. 1925(b)(4)(v).

not located any place in the record where Creary asked the trial court to hold a hearing on this issue, and his brief does not cite any such location. Therefore, Creary has waived this claim. Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 2117(c), 2119(e) (requiring appellant's brief to identify the place of raising or preserving of issues). In addition, his failure to make any argument to support his contention that we should grant a new trial based on the current record further waived such a claim. *See* Pa.R.A.P. 2119(a); ***Commonwealth v. Samuel***, 102 A.3d 1001, 1005 (Pa.Super. 2014) (finding issue waived where defendant did not adequately develop argument by identifying factual basis and providing citation to and discussion of relevant authority).

Even if he had not committed waiver, we would reject his claims of Rule 573 and ***Brady*** violations as meritless. Rule 573 requires the Commonwealth to disclose to the defendant's attorney "[a]ny evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth." Pa.R.Crim.P. 573(B)(1)(a). ***Brady*** held that due process is violated when the prosecution willfully or inadvertently withholds evidence favorable to a defendant. ***Commonwealth v. Dennis***, 17 A.3d 297, 308 (Pa. 2011).

The record here provides no basis on which to find a violation of either Rule 573(B)(1)(a) or ***Brady***. At trial, Complainant testified that he never told the police that other people were in the house. Consistent with that testimony, Detective Slobodian and Officer Wang likewise testified that Creary did not

mention that other people were in the home. In response to the request to give a missing witness instruction, the court stated, "I think it was agreed upon that the Commonwealth only found out about the two witnesses to your knowledge when the complaining witness was on the stand." N.T., 8/27/15, at 4-5. Creary did not dispute this. There was therefore no fact question for the court to resolve at a hearing before addressing Creary's claims and the trial court did not err in denying relief on Creary's claims. **See** Pa.R.Crim.P. 573(B)(1)(a) (providing that prosecution must disclose evidence "within the possession or control of the attorney for the Commonwealth"); **Dennis**, 17 A.3d at 308 (requiring defendant asserting **Brady** violation to show Commonwealth suppressed evidence "willfully or inadvertently").

Creary next claims the trial court erred in denying the jury's request to see Officer Wang's police report during deliberations. Creary maintains that the report was crucial to the question of Complainant's credibility, and he argues that viewing the document would have assisted the jury.

Pennsylvania Rule of Criminal Procedure 646 provides that "[u]pon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C)." Pa.R.Crim.P. 646(A). Paragraph C excludes specific items from going back with the jury during deliberations, none of which is a police report. **See** Pa.R.Crim.P. 646(C). Whether to allow the jury to review the police report during its deliberations was thus left to the discretion of the trial judge. **See Commonwealth v. Barnett**, 50 A.3d 176,

194 (Pa.Super. 2012) (citing **Commonwealth v. Merbah**, 411 A.2d 244, 247 (Pa.Super. 1979)). We will not reverse absent an abuse of discretion. **Id.**

The trial court here did not abuse its discretion in not allowing the jury to have a copy of Officer Wang's report during deliberations. The recognized reason for excluding certain items from the jury's deliberations is to prevent the jury from placing undue emphasis or credibility on the material sent back with the jury, and de-emphasizing or discrediting other items not in the room with the jury. **Commonwealth v. Dupre**, 866 A.2d 1089, 1103 (Pa.Super.2005). This is the very reason the trial court cited when it denied the jury's request. It explained that it does not send exhibits back with the jury because it does not "want a trial within a trial in the back room." N.T., 8/27/15, at 32. We do not consider this an abuse of discretion. Furthermore, the court had instructed the jury to pay attention during the course of trial, and the information in the report had been put before the jury numerous times.

In his final claim, Creary argues the trial court erred by permitting Complainant to testify regarding the facts underlying his *crimen falsi* conviction. On cross-examination, the Complainant testified he had a prior conviction for theft of services. Creary claims it was error for the court to allow the Complainant to explain on re-direct examination that the conviction resulted from his use of his transpass to get both him and another individual onto a bus.

Whether underlying facts may be used to rehabilitate a witness whose credibility has been attacked with a prior *crimen falsi* conviction appears to be an issue of first impression in Pennsylvania appellate courts. Pursuant to Pennsylvania Rule of Evidence 609, evidence that a witness has been convicted of a crime involving dishonesty or false statement must be admitted if the conviction or release from confinement occurred within the last ten years. Pa.R.E. 609(a)-(b). "When a defendant is impeached through introduction of prior convictions," the witness's opponent may only introduce "the name, time, and place of the crime and the punishment received." **Commonwealth v. Oglesby**, 418 A.2d 561, 564 (Pa.Super. 1980). We have applied this limitation to all witnesses, not merely to defendants, **id.**, and we employ this limitation "to minimize the potential prejudice and distraction of issues already inherent in the mention of prior offenses." **Commonwealth v. Jones**, 378 A.2d 471, 477 (Pa.Super. 1977) (*en banc*) (quoting **Commonwealth v. Albright**, 313 A.2d 284, 286(Pa.Super. 1973) (opinion in support of reversal)).

In prior cases, we have precluded a party seeking to impeach a witness from using the facts underlying a prior conviction, in circumstances where such facts would increase the risk of prejudice to a party or confusion of the issues. For example, in **Oglesby**, a prosecution witness conceded on direct examination by the Commonwealth that he had been convicted of murder and related offenses. 418 A.2d at 564. The defendant sought to impeach the witness on cross-examination by reading passages from the indictment

charging the witness with murder, to reveal the facts underlying the charge. The trial court disallowed the defendant from doing so, and we affirmed. *Id.* In a similar vein, in *Jones*, we found the trial court erred in reading to the jury a stipulation to not only the defendant's prior conviction, but also the facts of the prior conviction. We explained that the court's doing so increased the likelihood the jury would give "excessive weight to the vicious record of crime. . . ." *Jones*, 378 A.2d at 476.

On the other hand, we have affirmed a trial court's decision to not permit a defendant to rehabilitate a witness with testimony about the witness's reputation for truth and veracity where the prosecution had impeached with evidence of prior convictions. *Commonwealth v. Ford*, 184 A.2d 401, 404 (Pa.Super. 1962). We pointed out, however, that the trial court had allowed defense counsel to introduce evidence that the witness had received a pardon, evidently to rehabilitate the witness. *Id.* In affirming the trial court, we cited as a guiding principle that "[t]he extent to which a witness may be rehabilitated" after impeachment with a prior conviction "is a matter in which the trial judge has, and must have, wide control." *Id.* at 404-05 (quoting *Bank of Am. Nat'l Trust and Savings Ass'n v. Rocco*, 241 F.2d 455, 459 (3d Cir. 1957)).

Although the principle that the trial judge has "wide control" in such situations guides our decision, no Pennsylvania decision directly addresses the question presented here: whether a party may rehabilitate a witness impeached with a prior *crimen falsi* conviction with evidence of the facts

underlying the conviction. Other jurisdictions have addressed this question and have come to divergent conclusions. Some courts conclude that the evidence regarding the prior conviction must end with the fact of the conviction, and preclude any discussion of extenuating circumstances. ***See, e.g., United States v. Plante***, 472 F.2d 829, 832 (1st Cir. 1973); ***Smith v. Mississippi***, 59 So. 96, 96 (Miss. 1912); ***Lamoureux v. New York, N.H. & H.R. Co.***, 47 N.E. 1009, 1010 (Mass. 1897). These courts reason that the questions regarding the underlying facts of the prior conviction are collateral to the issues in the case and "the opponent of the witness would normally not be in a position to contradict the explanation." ***Plante***, 472 F.2d at 832; ***See also, e.g., Smith***, 59 So. at 96; ***Lamoureux***, 47 N.E. at 1010 (finding court did not err in excluding evidence of underlying acts and noting, "Logically, there is no doubt that evidence tending to diminish the wickedness of the act. . . . Nevertheless, the conviction must be left unexplained. Obviously, the guilt of the witness cannot be retried" (citations omitted)).

Other courts, however, find that the facts underlying the crime are relevant and admissible where a "witness attempts to rehabilitate himself by explaining the circumstances" of the conviction. ***Brown v. Georgia***, 576 S.E.2d 870, 872 (Ga. 2003) (quoting ***Terrell v. Georgia***, 572 S.E.2d 595, 6003 (Ga. 2002)). ***See also United States v. Crisafi***, 304 F.2d 803, 804 (2d Cir. 1962) (holding testifying defendant "whose credibility has been attacked by the showing of a prior conviction of crime may attempt rehabilitation by a brief explanation in the control of the trial court"); ***California v. Thomas***,

254 Cal. Rptr. 15, 22 n.6 (Cal. Ct. App. 1988) (stating rule precluding use of underlying facts is for protection of defendant, and defendant may waive the protection to explain facts of prior conviction); **Donnelly v. Donnelly**, 143 A. 648, 650 (Md. 1928) (concluding "the sounder and fairer rule seems to be that the witness may be allowed to explain the circumstances of the offense, if in extenuation of the act and in mitigation of its effect").

These courts have reasoned that permitting a brief explanation for the conviction will "seldom be more confusing or time-consuming" than admitting proof of the conviction and a "jury is not likely to give undue weight to an ex-convict's uncorroborated assertion of innocence or of extenuating circumstances." **United States v. Boyer**, 150 F.2d 595, 596 (D.C. Cir. 1945). Courts finding the evidence admissible for rehabilitation typically leave the determination of whether to permit inquiry into extenuating circumstances of a prior conviction to the discretion of the trial court. **See, e.g., Dryden v. United States**, 237 F.2d 517, 517-18 (5th Cir. 1956) (courts have discretion as to extent to permit inquiry into witness's explanation of prior conviction); **Minnesota v. Yeager**, 399 N.W.2d 648, 653 (Minn. Ct. App. 1987) (same).[6]

_____

[6] One treatise concludes that an impeached witness should be able to explain the circumstances of the offense to protect his or her reputation:

> [H]aving regard to the publicity of one's discredit on the stand and the necessity of guarding against the abuses of the impeachment process and of preventing the witness-box from becoming a place of dread and loathing, it would seem a harmless charity to allow the witness to make such

We side with the decisions that leave the determination of whether a party may rehabilitate a witness with the facts underlying a *crimen falsi* conviction that was used to impeach the witness to the discretion of the trial court. They are both more in line with Pennsylvania precedents and more persuasive.

Leaving the question of whether underlying facts may be used to the trial court's discretion is consistent with our statement in **Ford** that trial judges must have "wide control" in determining the propriety of evidence offered to rehabilitate a witness impeached with a prior conviction. **See Ford**, 184 A.2d at 404-05. Such discretion also furthers the rule that relevant evidence is admissible, where not otherwise prohibited by law, unless the trial court finds that its probative value is outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.Evid. 402, 403. In fact, we have stated that "it is the duty of the trial judge, in the first instance, to determine whether evidence which though logically relevant on the ultimate issue, may nevertheless be excluded, because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues." **Geesey v. Albee Pa. Homes, Inc.**, 235 A.2d

---

protestations on his own behalf as may feel able to make
with a due regard to the penalties of perjury.

*New Wigmore Impeachment & Rehab.* § 9.6 (quoting 4 *J. Wigmore on Evidence* § 1117 at 251 (Chadbourne rev. 1972)).

176, 180 (Pa.Super. 1967); **Commonwealth v. Hicks**, 91 A.3d 47, 54 (Pa. 2014) (noting Rule 403's balancing inquiry is "fact- and context-specific" and "normally dependent on the evidence actually presented at trial").

We further find that leaving the determination to the discretion of the trial court is congruent with Pennsylvania's rule governing re-direct examination, which limits examination to "answering only such matters as were drawn out in the immediately preceding examination of the adversary." **Commonwealth v. Carpenter**, 617 A.2d 1263, 1266 (Pa. 1992); **Catina v. Maree**, 447 A.2d 228, 231 (Pa. 1982). The trial court is in a position to observe the cross-examination and ensure that any questions on re-direct regarding the underlying facts are limited to answering that cross-examination.

We therefore conclude that there is no bright-line rule regarding the use of the underlying facts of a prior conviction to rehabilitate a witness whose credibility has been questioned by the admission of a prior *crimen falsi* conviction. Rather, such evidentiary determinations are left to the trial court's discretion.

Applying an abuse of discretion standard here, we affirm the trial court's decision to allow the Commonwealth to rehabilitate Complainant with his testimony about the facts underlying the prior conviction. It was relevant re-direct, as it responded to a matter the defense brought out on cross-examination. It also was brief, and did not constitute a "trial within a trial,"

such that it risked substantially confusing the issues or diverting the jury's attention into an essentially collateral matter.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/18