J-E03004-21

2022 PA Super 18

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                        :  PENNSYLVANIA
            Appellee           :
                                          :
             v.               :
                                          :
AKEEM KEVIN WASHINGTON       :
                                          :
           Appellant         :      No. 1655 MDA 2019

Appeal from the PCRA Order Entered September 11, 2019
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0000862-2015

BEFORE:  PANELLA, P.J., BENDER, P.J.E., BOWES, J., OLSON, J., STABILE, J., KUNSELMAN, J., NICHOLS, J., KING, J., and McCAFFERY, J.

OPINION BY KING, J.:              **FILED:  FEBRUARY 1, 2022**

Appellant, Akeem Kevin Washington, appeals from the order entered in the Lancaster County Court of Common Pleas, which denied his second petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  In this appeal, we are asked to decide, *inter alia*, whether trial counsel provided erroneous advice to Appellant concerning his prior convictions, which interfered with Appellant's constitutional right to testify in his own defense at trial.  For the following reasons, we agree with Appellant that trial counsel's advice to Appellant not to testify because the jury would hear not only that he had a prior conviction for aggravated assault, but also about the details of that crime, was improper legal advice such that Appellant should be afforded a new

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

trial. Therefore, we reverse the order denying PCRA relief, vacate the judgment of sentence, and remand for a new trial.

## I. Facts and Procedural History

The relevant facts and procedural history of this case are as follows. In the early morning hours of December 28, 2014, police observed a disturbance outside of a Lancaster City restaurant and lounge. The officers made contact with the involved parties, which included Appellant. Appellant became combative with the officers, yelled profanities, and refused arrest, causing the officers to use a taser on Appellant to control the situation. Ultimately, the officers arrested Appellant and transported him to the police station. Following his arrest on charges of terroristic threats, resisting arrest, and related offenses, Appellant was remanded to the Lancaster County Prison ("LCP"). While incarcerated, Appellant allegedly told his cellmate, Tremayne Jones, that he wanted to kill the officers involved in his arrest. According to Mr. Jones, Appellant solicited him in plotting to kill the officers. Mr. Jones reported Appellant's plot to authorities, and the Commonwealth charged Appellant at a separate docket with four counts of criminal solicitation to commit homicide. Appellant proceeded to a jury trial on the solicitation docket on August 10, 2015.

The PCRA court explained in its opinion:

> [Mr.] Jones was the main witness for the Commonwealth at trial. He testified that on December 29, 2014, he gave an accurate and truthful statement to a corrections officer at LCP outlining his conversations with [Appellant] while

housed with him in a cell at LCP on December 28 and 29, 2014. In this statement, [Mr.] Jones revealed how [Appellant] had solicited his help in murdering three police officers.[7]

> [7] Although he had no specific recollection of the conversations recorded in the statement, [Mr.] Jones admitted that the statement was in his handwriting, and signed by him.

[Mr.] Jones then met with the Lancaster City Police on December 31, 2014, and gave a nine-page statement.[8] In this statement to the police, [Mr.] Jones outlined two plans that [Appellant] had laid out for killing the three officers involved in his arrest, Officers Berry and Pannone, and Sergeant Berkheiser. [Appellant] asked [Mr.] Jones to make a fake call to the police station to lure Officers Pannone and Berry to a remote area so [Appellant] could shoot out their car with an automatic weapon.[9] [Appellant] further stated he was going to follow Sergeant Berkheiser home and shoot him there, and if his family came outside, he would shoot them too. [Mr.] Jones also detailed in his statement to the police the specifics of [Appellant's] arrest on December 28, 2014, as told to him by [Appellant].

> [8] Again, [Mr.] Jones stated he had no independent recollection of what he told the police but he acknowledged that the interview took place and that it was his signature on the statement. [Mr.] Jones noted that he "wouldn't have lied to the police" when he gave them his statement.

> [9] [Appellant] told [Mr.] Jones he had access to different types of weapons, including an AK47 and AR15.

On February 10, 2015, [Mr.] Jones testified at [Appellant's] preliminary hearing consistent with his December 31, 2014, police statement regarding [Appellant's] recruitment of [Mr.] Jones.[10] Finally, during the course of his incarceration at LCP, [Mr.] Jones had a number of telephone conversations with his girlfriend in Texas, during which they discussed [Appellant's] solicitation of [Mr.] Jones to assist in the murder of two police officers. These recorded

conversations were introduced at trial and played for the jury.

> [10] Again, [Mr.] Jones had no specific recollection of his testimony but agreed that what he would have testified to at that time would have been accurate and truthful.

> The Commonwealth argued at trial that [Mr.] Jones' statements to law enforcement, his testimony at the preliminary hearing, and his conversations with his girlfriend were all consistent and very detailed—the names of [Appellant's] three arresting officers, the name of the establishment outside which [Appellant] was arrested, the fact that [Appellant] was tased and kneed in the head, and the fact that Sergeant Berkheiser said "mean" things to him. The jury was told that all of [Mr.] Jones' statements were accurate, reliable and trustworthy because there would be no way for [Mr.] Jones to have all the information he had about [Appellant's] charges and the individuals involved in his arrest unless [Appellant] had told him. …

(PCRA Court Opinion, filed September 11, 2019, at 13-15) (internal citations omitted).

On August 13, 2015, a jury convicted Appellant of three counts of criminal solicitation for the three police officers and acquitted him of a fourth count relative to the family members of Sergeant Berkheiser. The court sentenced Appellant on October 30, 2015, to an aggregate term of 25½ to 60 years' incarceration. On December 13, 2016, this Court affirmed Appellant's judgment of sentence. *See **Commonwealth v. Washington***, 159 A.3d 1002 (Pa.Super. 2016) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with the Supreme Court.

In November 2017, Appellant retained private PCRA counsel. On

January 23, 2018, PCRA counsel filed a motion for extension of time to file a PCRA petition. The court granted the extension and gave counsel until March 20, 2018 to file a PCRA petition. Appellant filed a counseled PCRA petition on March 19, 2018, alleging trial counsel's ineffectiveness. The Commonwealth filed a motion to dismiss the petition as untimely, claiming Appellant's judgment of sentence had become final on January 12, 2017, before PCRA counsel had filed the motion for extension, and that the PCRA court lacked jurisdiction to extend the filing deadline in any event. On April 17, 2018, the court granted the Commonwealth's motion and dismissed the petition as untimely.

On May 11, 2018, Appellant filed a *pro se* second PCRA petition, raising PCRA counsel's ineffectiveness in failing to file a timely PCRA petition. Appellant ultimately retained new private counsel, who filed an amended PCRA petition on July 20, 2018, raising trial counsel's ineffectiveness. On July 23, 2018, the Commonwealth filed another motion to dismiss, claiming the current PCRA petition was still untimely. In response, Appellant claimed the current petition was timely under the "new facts" exception to the PCRA time-bar, based on prior PCRA counsel's essential "abandonment" of Appellant. On September 21, 2018, the Supreme Court issued a decision in *Commonwealth v. Peterson*, 648 Pa. 313, 316, 192 A.3d 1123, 1125 (2018), holding that PCRA "counsel's negligence *per se* in filing an untimely [first] PCRA petition constitutes adequate grounds to permit the filing of a new

- 5 -

PCRA petition beyond the one-year time bar pursuant to the exception in subsection 9545(b)(1)(ii)." Thus, the PCRA court deemed moot the Commonwealth's motion to dismiss.

On December 17, 2018, Appellant filed a second amended PCRA petition. Among other claims, Appellant alleged trial counsel was ineffective in advising him not to testify at trial. The Commonwealth filed an answer on February 5, 2019, with an additional motion to dismiss, asserting that its critical witness, Mr. Jones, had died and retrying Appellant's case would substantially prejudice the Commonwealth.

The court held a PCRA hearing on April 10, 2019. At the PCRA hearing, trial counsel could not recall if he and Appellant had any pre-trial conversation regarding whether Appellant would testify, and if they did have such a conversation, it would have been "very brief." (**See** PCRA Hearing, 4/10/19, at 46-49). On the first day of trial, Appellant turned to trial counsel and said "this is not going well, I need to testify…because I need to be able to explain to the jury how [Mr. Jones] got this information"; at that point, Appellant and trial counsel discussed whether Appellant should testify. (**See id.** at 58-59). Appellant was "very animated" about wanting to testify and asked trial counsel to confer with his family about it as well. (**Id.** at 61).

Trial counsel knew Appellant had a prior burglary conviction that constituted *crimen falsi* and Appellant also had a prior aggravated assault conviction. (**Id.** at 63). Trial counsel told Appellant, "I don't want you to get

on the stand because the prosecutor could bring up the aggravated assault conviction and then the jury…will think you're violent." (*Id.*). Trial counsel was concerned in particular with the aggravated assault conviction because the facts of that case involved a domestic incident which counsel "thought would be just too shocking if the jury were to hear that" where Appellant was on trial for solicitation to commit a violent act. (*Id.* at 64). Trial counsel believed at the time that if Appellant were to testify, the conviction for aggravated assault and the details surrounding that conviction would come in for impeachment purposes. (*Id.* at 65). Based on that belief, trial counsel advised Appellant not to testify. (*Id.*).

Trial counsel admitted that if the aggravated assault conviction was not admissible for impeachment purposes, "then there would have been no reason to advise [Appellant not to testify], specifically [because Appellant told counsel he] really want[ed] to get up there to explain to the jury how [Mr. Jones] got that [information]." (*Id.* at 65-66). Even though the burglary conviction would have been admissible for impeachment purposes, trial counsel made clear that he "wasn't even thinking about the burglary conviction"; rather, trial counsel's "concern was the aggravated assault because of the specific details of that [conviction]." (*Id.* at 66). Trial counsel expressly told Appellant and his family that Appellant should not testify because if he did, the jury would hear about his violence. Appellant trusted counsel's advice. (*Id.* at 66-67).

On cross-examination, the Commonwealth asked trial counsel if he

considered the risk that if Appellant had testified, the aggravated assault conviction might have come in if Appellant "opened the door" to its admission. (*Id.* at 88). In response, trial counsel stated:

> I do not recall thinking of that risk because, again, I knew him pretty well. He's not a foolish man. And that he—he did tell me he primarily wanted to get on the stand not to testify that he's never been violent. I mean, he really wanted to focus on the alternative way that Mr. Jones could have gotten the evidence. So again, because of that, that was the narrowness of our conversation. Just candidly, it would not have occurred to me to fear that he was going to say something that opened the door to violence.

(*Id.* at 88-89).

With respect to his decision not to testify at trial, Appellant stated that he and trial counsel did not discuss whether Appellant would testify at any time before trial. (*Id.* at 113). Appellant admitted he did not tell trial counsel that he wanted to testify prior to trial. (*Id.*) During trial, when Appellant heard Mr. Jones' testimony, Appellant decided he "needed to get up there." (*Id.* at 114). Appellant "nudged" trial counsel and told him that Mr. Jones must have learned the information about Appellant's arrest through paperwork that Appellant had in their shared cell. (*Id.*) Appellant told trial counsel he "wanted to testify so they could know the whole story as to how any information that was on this paperwork was being transmitted by Mr. Jones." (*Id.* at 116-17). Appellant said there were numerous occasions when Mr. Jones was in his cell by himself and could have accessed Appellant's paperwork. (*Id.* at 117). Appellant believed Mr. Jones must have accessed

his paperwork because in Mr. Jones' statement to police, he spelled the officers' names involved with Appellant's arrest correctly, and Appellant did not even know the officers' names. (*Id.* at 118).

After Appellant told trial counsel he wanted to testify, trial counsel said it "[w]asn't a good idea" based on Appellant's prior aggravated assault conviction. (*Id.* at 118-19). Trial counsel told Appellant that if he testified, the jury would hear about Appellant's prior aggravated assault conviction; Appellant relied on trial counsel's advice. (*Id.* at 119). Appellant clarified that if trial counsel had told him the jury would not hear about the aggravated assault conviction, Appellant would have chosen to testify. (*Id.* at 125). Appellant admitted that if trial counsel had told him the jury might hear about his aggravated assault conviction, he was not sure if he would have chosen to testify. (*Id.* at 126).

Following the hearing and the submission of post-hearing briefs, the court denied PCRA relief on September 11, 2019. On October 8, 2019, Appellant timely filed a notice of appeal. The court ordered Appellant on October 10, 2019, to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on November 5, 2019.

On March 23, 2021, a three-judge panel of this Court affirmed the order denying PCRA relief, with one dissent. Appellant subsequently filed a petition for reargument before an *en banc* panel of this Court. On June 3, 2021, this Court granted the request for *en banc* reargument and withdrew the March

23, 2021 decision.  The parties have filed supplemental briefs in this appeal.

## II.   Issues on Appeal

Appellant raises the following claims for our review:

1. Whether the PCRA [c]ourt erred in denying [Appellant] a new trial where:

a. Trial counsel's advice that [Appellant]'s prior Aggravated Assault conviction would be admissible if he were to testify was so unreasonable that [Appellant] did not and could not have made a knowing and intelligent decision to not testify at trial.

b. Trial counsel provided ineffective assistance of counsel when he failed to elicit from the primary Commonwealth witness prior statements that would have brought into question his credibility.

c. Trial counsel provided ineffective assistance of counsel when he failed to call two witness[es] on [Appellant]'s behalf at trial.  The failure of which denied [Appellant] a fair trial as these witnesses would have severely undercut the prosecution's main arguments regarding [Appellant]'s guilt.

(Appellant's Brief at 4).

## III.   Scope and Standard of Review

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." *Commonwealth v. Beatty*, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019).  This Court grants great deference to the factual findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Howard*, 249 A.3d 1229 (Pa.Super. 2021).  "[W]e review

the court's legal conclusions *de novo*." ***Commonwealth v. Prater***, 256 A.3d 1274, 1282 (Pa.Super. 2021).

### IV.    Appellant's Argument

In his first claim of trial counsel ineffectiveness, Appellant argues that he told trial counsel he wanted to testify to discredit Mr. Jones' statements that Appellant had solicited him to murder the officers involved with Appellant's arrest.  Specifically, Appellant claims he wanted to testify that Mr. Jones had access to Appellant's court documents in their shared prison cell, which is how Mr. Jones knew the names of the officers who arrested Appellant and the facts giving rise to Appellant's arrest.

Appellant contends trial counsel advised against testifying because the jury would hear about Appellant's "violence."  Appellant insists trial counsel was concerned about admission of Appellant's prior aggravated assault conviction, which would have demonstrated that Appellant was a violent person.  Appellant avers trial counsel's advice in this regard was erroneous because his aggravated assault conviction was not a crime involving dishonesty (*crimen falsi*), so it would not have automatically been admissible for impeachment purposes.  Appellant acknowledges that in some instances the underlying facts of an offense can render a conviction *crimen falsi* even if the offense is not inherently *crimen falsi*.  Appellant submits, however, that the Commonwealth did not assert at the PCRA hearing that the underlying facts of his aggravated assault conviction transformed his conviction into one

of *crimen falsi*. To the contrary, Appellant emphasizes that the record discloses the aggravated assault conviction was based on a "domestic incident" and had nothing to do with any crime of dishonesty.

Appellant further acknowledges his aggravated assault conviction could have possibly come in at trial if Appellant "opened the door" by testifying about his good character, but that chance was unlikely and not a reason why trial counsel advised him not to testify. Appellant also concedes that he has a prior conviction for burglary. Appellant emphasizes, however, that trial counsel was concerned only with the aggravated assault conviction and counsel's advice against testifying was not based on the prior burglary conviction. Appellant admits that burglary is also a "crime of violence," but he suggests the jury would not have necessarily associated a burglary conviction with violence the same way a jury would have with respect to an aggravated assault conviction.

Appellant maintains he suffered prejudice due to trial counsel's incorrect legal advice because he would have testified if he knew his aggravated assault conviction was not automatically admissible at trial. Appellant also notes the court did not conduct an on-the-record colloquy to determine whether his decision not to testify was knowing, intelligent, and voluntary. Appellant concludes trial counsel was ineffective, and this Court must grant him a new trial. For the following reasons, we agree relief is due.

## V. Applicable Law

### A. Ineffectiveness Test

"Counsel is presumed to have rendered effective assistance." ***Commonwealth v. Hopkins***, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted).

### B. Right to Testify

"The right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution." ***Commonwealth v. Nieves***, 560 Pa. 529, 534-35, 746 A.2d 1102, 1105 (2000). Significantly, "the presumption must always be against the waiver of a constitutional right," and we are bound to "place the burden of proving waiver on the Commonwealth." ***Commonwealth v. Robinson***, 970 A.2d 455, 458 (Pa.Super. 2009) (*en banc*) (internal citations omitted). Thus:

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Nieves, supra* at 533-34, 746 A.2d at 1104 (internal citations omitted).

> [T]he appropriate standard for assessing whether a defendant was prejudiced by trial counsel's ineffectiveness regarding the waiver of his right to testify is whether the result of the **waiver proceeding** would have been different absent counsel's ineffectiveness, not whether the outcome of the trial itself would have been more favorable had the defendant taken the stand.

*Commonwealth v. Walker*, 110 A.3d 1000, 1005 (Pa.Super. 2015), *appeal denied*, 633 Pa. 756, 125 A.3d 777 (2015) (emphasis in original).

A trial court is not required to conduct a colloquy to determine whether a defendant has made a knowing, intelligent and voluntary waiver of his right to testify.[2] *Commonwealth v. Todd*, 820 A.2d 707, 712 (Pa.Super. 2003). Nevertheless, a criminal defendant must understand his decision not to testify if not by colloquy, then by the presumed competent advice of counsel. *See id.* (holding appellant's waiver of right to testify was knowing, intelligent and

---

[2] "A waiver colloquy is a procedural device; it is not a constitutional end or constitutional 'right.'" *Commonwealth v. Mallory*, 596 Pa. 172, 189, 941 A.2d 686, 697 (2008), *cert. denied*, 555 U.S. 884, 129 S.Ct. 257, 172 L.Ed.2d 146 (2008). Although "an on-the-record colloquy is a useful procedural tool whenever the waiver of any significant right is at issue, constitutional or otherwise…, the colloquy does not share the same status as the right itself." *Id.* at 190, 941 A.2d at 697.

voluntary, where court credited counsel's testimony that he discussed right to testify with appellant on numerous occasions and counsel's advice was reasonable).

### C.    *Crimen Falsi*

Pennsylvania Rule of Evidence 609 provides, in pertinent part:

> **Rule 609.   Impeachment by Evidence of a Criminal Conviction**
>
> **(a) In General.**  For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved **dishonesty or false statement**.

Pa.R.E. 609(a) (emphasis added).  "[C]rimes involving dishonesty or false statement [are] commonly referred to as *crimen falsi* crimes, for purposes of impeaching a witness's credibility."  **Commonwealth v. Moser**, 999 A.2d 602, 607 n.6 (Pa.Super. 2010), *appeal denied*, 610 Pa. 595, 20 A.3d 485 (2011).  **See also Commonwealth v. E. Jones**, 334 Pa. 321, 323, 5 A.2d 804, 805 (1939) (stating term *crimen falsi* involves element of falsehood and includes everything which has tendency to injuriously affect administration of justice by introduction of falsehood and fraud).

When deciding whether a crime is *crimen falsi*, we initially "examine the essential elements of the offense to determine if the crime is inherently *crimen falsi*—whether dishonesty or false statement are a necessary prerequisite to commission of the crime."  **Commonwealth v. Davis**, 17 A.3d 390, 395-96 (Pa.Super. 2011), *appeal denied*, 611 Pa. 678, 29 A.3d 371 (2011).  "[I]f the

- 15 -

crime is not inherently *crimen falsi*, this Court then inspects the underlying facts that led to the conviction to determine if dishonesty or false statement facilitated the commission of the crime. The burden of proof is upon the party offering the conviction during cross-examination." ***Id.*** at 396.

Aggravated assault is not inherently *crimen falsi*. ***See Commonwealth v. Hall***, 867 A.2d 619 (Pa.Super. 2005), *appeal denied*, 586 Pa. 756, 895 A.2d 549 (2006) (noting conviction for aggravated assault is crime of violence, not of falsity or deceit; since it does not reflect upon one's veracity it could not have been used to impeach witness's testimony); ***Commonwealth v. Grimm***, 378 A.2d 377, 380 (Pa.Super. 1977) (explaining: "[C]onvictions showing assaultive or disorderly conduct do not involve false statement or dishonesty. **They are completely irrelevant to the issue of the witnesses' veracity**. It was, therefore, improper for the court to allow this form of impeachment") (emphasis added). On the other hand, burglary is considered inherently *crimen falsi*. ***See Commonwealth v. Cole***, 227 A.3d 336, 340 (Pa.Super. 2020) (explaining burglary and theft are *crimen falsi* offenses).

Importantly, only the underlying *crimen falsi* conviction is admissible for impeachment purposes at trial; the **facts** underlying that conviction are not admissible. ***Commonwealth v. Oglesby***, 418 A.2d 561, 592 (Pa.Super. 1980) (stating that when defendant is impeached through introduction of prior convictions, only name, time and place of crime and punishment received may

be entered into evidence). "We employ this limitation to minimize the potential prejudice and distraction of issues already inherent in the mention of prior offenses." ***Commonwealth v. Creary***, 201 A.3d 749, 754 (Pa.Super. 2018) (internal citation omitted). ***See also Commonwealth v. R. Jones***, 378 A.2d 471, 476-77 (Pa.Super. 1977) (reversing and remanding for new trial where court informed jury of **details** of defendant's prior conviction; "By informing the jury of more than the basic fact of conviction, we believe that the [trial] court increased the natural and inevitable tendency of the tribunal to give excessive weight to the vicious record of crime thus exhibited"; here, jury was improperly informed of details of prior crime, including name of victim and amount stolen, and also that defendant had been convicted under alias) (internal citations omitted).

### D.    Relevant Ineffectiveness Cases

In ***Nieves, supra***, trial counsel advised the defendant to waive his right to testify by informing the defendant that if he took the stand, he would be impeached with his prior criminal record, which included two firearms offenses and at least two drug trafficking offenses. The defendant claimed that counsel's advice constituted ineffective assistance, and our Supreme Court agreed "such advice was clearly unreasonable as it is well-established that evidence of prior convictions can only be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement." ***Nieves, supra*** at 534, 746 A.2d at

1104-05. Because the defendant's prior convictions did not involve dishonesty or false statements, they would not have been admissible to impeach the defendant's credibility. As the defendant's decision not to testify was based solely on this erroneous advice, the Court held that his decision "cannot be deemed knowing or intelligent." *Id.* at 534, 746 A.2d at 1105.

The Supreme Court also expressly rejected the Commonwealth's argument that trial counsel's advice not to testify was reasonable where the Commonwealth could have cross-examined the defendant regarding the motive for the killing at issue, which was allegedly a drug debt, and thereby introduced the prior drug convictions. The Supreme Court emphasized that although trial counsel mentioned he was initially concerned with "opening the door to evidence of drug activity," trial counsel later clarified that was not the reason for his advice not to testify. *Id.* at 535, 746 A.2d at 1105. Rather, trial counsel's testimony made clear his advice was based solely on counsel's belief that the defendant would be impeached with his prior convictions. Because that advice was clearly erroneous, the Supreme Court held "that trial counsel's advice was so unreasonable as to vitiate [the defendant's] knowing and intelligent decision not to testify." *Id.* at 535-37, 746 A.2d at 1105-06. Therefore, the Court remanded for a new trial.

Additionally, in **Commonwealth v. Moore**, 715 A.2d 448 (Pa.Super. 1998), a jury convicted the defendant of one count each of attempted murder and aggravated assault, and two counts each of simple assault and robbery.

In his first PCRA petition, the defendant claimed trial counsel had rendered ineffective assistance by permitting the introduction of evidence relating to the defendant's criminal history. Specifically, the defendant testified in his own defense at trial, and trial counsel elicited testimony from the defendant that he had prior convictions for aggravated assault, forgery, and two robberies. The defendant also explained that he was currently on parole for robbery. The PCRA court found that trial counsel was ineffective for allowing such evidence to come in and granted the defendant a new trial. *See id.* at 450-51.

The Commonwealth appealed, and this Court affirmed the award of a new trial, in part due to trial counsel's ineffectiveness. This Court explained that while the Commonwealth could have introduced the defendant's robbery and forgery convictions as *crimen falsi* to impeach his testimony, the defendant's aggravated assault conviction could not have been used for impeachment purposes. *Id.* at 452. This Court stated: "Here, because [the defendant's] previous aggravated assault conviction is not in the nature of *crimen falsi* and does not fall within the exceptions related to other crime evidence, the Commonwealth could not have introduced this conviction." *Id.* This Court further held that counsel lacked a reasonable basis for his actions in permitting the introduction of such evidence, and that it could not "fault the PCRA court's finding that [the defendant] suffered prejudice due to trial counsel's ineffectiveness[.]" *Id.*

## VI.   Legal Analysis

Instantly, the parties agree that aggravated assault is not inherently *crimen falsi*. **See id.  See also Hall, supra**; **Grimm, supra**.  Although in some instances the underlying facts of a crime can be used to admit a prior conviction that is not inherently *crimen falsi* (**see Davis, supra**), nothing in this record suggests, and the Commonwealth did not argue at the PCRA hearing, that dishonesty or false statement facilitated commission of Appellant's prior aggravated assault conviction.  To the contrary, the record indicates that Appellant's aggravated assault conviction was for slashing the neck of his then-girlfriend.  (**See** N.T. Sentencing, 10/30/15, at 8).

In its supplemental brief, the Commonwealth insists that Appellant bore the burden at the PCRA hearing[3] to proffer evidence regarding the underlying facts of the aggravated assault conviction to demonstrate that those facts did not transform his aggravated assault conviction into one of *crimen falsi*.  (**See** Commonwealth's Supplemental Brief at 3-4).  Significantly, however, neither our Supreme Court in **Nieves**[4] nor this Court in **Moore** required the

---

[3] At the PCRA hearing, Appellant and trial counsel described Appellant's aggravated assault conviction as a "domestic incident."

[4] We reject the Commonwealth's suggestion that this Court's two-part test discussed in **Davis** would have changed the outcome of **Nieves**. (**See** Commonwealth's Supplemental Brief at 2 n.2).  Although this Court's 2011 decision in **Davis** came after our Supreme Court's decision in **Nieves**, the **Davis** Court relies on case law from 1995 discussing the two-part inquiry in deciding whether a crime is *crimen falsi*.  **See Davis, supra** at 395 (citing
*(Footnote Continued Next Page)*

defendants in those cases to produce evidence that the underlying facts of their respective crimes did not transform their prior convictions into *crimen falsi* offenses, to succeed on their ineffectiveness claims. ***See Nieves, supra***; ***Moore, supra***.

Importantly, even if the underlying facts of the aggravated assault conviction would have made it a proper *crimen falsi* conviction for impeachment purposes,[5] counsel's advice to Appellant not to testify to shield the jury from hearing about the **facts** of the aggravated assault conviction was improper in and of itself. ***See Creary, supra***. Consequently, even if Appellant's aggravated assault conviction was admissible for impeachment purposes as a *crimen falsi* offense based on its underlying facts, counsel's advice to Appellant not to testify was still erroneous where counsel told Appellant that the "facts" and "details surrounding" his aggravated assault

---

***Commonwealth v. Coleman***, 664 A.2d 1381 (Pa.Super. 1995), *appeal denied*, 545 Pa. 675, 682 A.2d 306 (1996)), for statement: "When deciding whether a particular offense is *crimen falsi*, one must address both the elemental aspects of that offense **and** the conduct of the defendant which forms the basis of the anticipated impeachment") (emphasis in original). Thus, ***Davis*** did not announce any "new" framework for deciding whether a crime is *crimen falsi*.

[5] Despite the fact that Appellant's prior aggravated assault and burglary convictions were charged on the same criminal information, nothing in the record suggests that Appellant's burglary offense somehow converted Appellant's separate aggravated assault conviction into one of *crimen falsi*. The actions of Appellant by slashing the neck of someone, while heinous, constitute a crime of violence, not one of dishonesty or falsehood. ***See Hall, supra***; ***Grimm, supra***.

conviction could come in at trial and would be "too shocking" for the jury to hear. (*See* N.T. PCRA Hearing at 64-65). *See R. Jones, supra*.

We acknowledge, and the parties agree, that Appellant's prior burglary conviction is a *crimen falsi* offense. *See Cole, supra*. Thus, had trial counsel advised Appellant not to testify to prevent the jury from hearing that Appellant had been previously convicted of burglary, such advice would have been reasonable.[6] Nevertheless, trial counsel made clear at the PCRA hearing that his advice against testifying was based **solely** on fear of Appellant's prior aggravated assault conviction coming in for impeachment purposes and the jury hearing details about that offense. (*See* N.T. PCRA Hearing at 64-65). In fact, counsel expressly stated that he "wasn't even thinking about the burglary conviction." (*Id.* at 66). Because the details of Appellant's prior aggravated assault conviction would not have been admissible for impeachment purposes as proper *crimen falsi* evidence, counsel's advice in this respect was erroneous.[7] *See Nieves, supra*. *See also Creary, supra*.

Additionally, trial counsel admitted that when advising Appellant not to

---

[6] Of course, had counsel advised Appellant not to testify because the jury would hear the underlying **facts** of the prior burglary conviction, that advice would be unreasonable. *See Creary, supra*; *R. Jones, supra*.

[7] The fact that trial counsel might have responded to hypothetical questions concerning whether counsel believed his advice to Appellant was erroneous is not the proper inquiry. This Court can decide as a matter of law whether counsel's advice was legally sound, and whether counsel rightly or wrongly believed his advice was improper is immaterial.

testify, counsel did not consider the possible risk of Appellant "opening the door" to admission of the aggravated assault conviction, based on Appellant's reasons for wanting to testify (to discredit Mr. Jones' version of the events) and because Appellant was "not a foolish man." (N.T. PCRA Hearing at 88-89). Thus, like the attorney in *Nieves*, trial counsel acknowledged that he did not have an alternative reasonable strategy for advising Appellant not to testify. *See Nieves, supra* at 537, 746 A.2d at 1106.

Further, our review of Appellant's testimony at the PCRA hearing confirms that, but for trial counsel's erroneous advice concerning admission of the aggravated assault conviction, Appellant would have testified. (*See* N.T. PCRA Hearing at 113-26). *See also Walker, supra*. The speculative nature of Appellant's testimony concerning whether Mr. Jones had access to Appellant's paperwork is of no moment; the relevant inquiry is whether Appellant's decision not to testify would have been different absent counsel's ineffectiveness. *See id.* Under these circumstances, Appellant has established trial counsel's ineffectiveness in connection with Appellant's waiver of his right to testify.[8] *See Nieves, supra*.

We recognize that Mr. Jones' death might hamper the Commonwealth's ability to prove its case upon Appellant's new trial. The Commonwealth argued before the PCRA court that even if Appellant could prove trial counsel's

---

[8] Based on our disposition, we do not address Appellant's remaining claims of trial counsel's ineffectiveness.

ineffectiveness, the court should have dismissed Appellant's PCRA petition due to the prejudice a new trial would cause the Commonwealth. While the PCRA court acknowledged the substantial prejudice a new trial would cause the Commonwealth, the court noted that Mr. Jones died during the pendency of Appellant's direct appeal. Thus, there was no causal connection between the prejudice to the Commonwealth and the filing of Appellant's original PCRA petition to warrant dismissal of Appellant's PCRA petition on that basis. (**See** PCRA Court Opinion at 27). **See also** 42 Pa.C.S.A. § 9543(b) (stating court shall dismiss PCRA petition "if it appears at any time that, because of delay in filing the petition, the Commonwealth has been prejudiced either in its ability to respond to the petition or in its ability to re-try the petitioner"). The Commonwealth does not challenge this aspect of the PCRA court's reasoning on appeal.

Additionally, the Commonwealth is not precluded from introducing Mr. Jones' prior testimony at a new trial. **See** Pa.R.E. 804(a)(4) (stating declarant is considered unavailable as witness if declarant cannot be present or testify at trial or hearing because of death); and (b)(1) (stating former testimony that was given as witness at trial, hearing or lawful deposition is not excluded by rule against hearsay if declarant is unavailable as witness and where testimony is now offered against party who had opportunity and similar motive to develop it by direct, cross, or redirect examination). Accordingly, we reverse the order denying PCRA relief, vacate the judgment of sentence, and

remand for a new trial.

Order reversed. Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction is relinquished.

President Judge Panella, President Judge Emeritus Bender, Judge Kunselman, Judge Nichols and Judge McCaffery join this opinion.

Judge Olson files a dissenting opinion which Judge Bowes and Judge Stabile join.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/01/2022